## Case No. 16,650.

### UNITED STATES v. WATKINS.

[4 Cranch, C. C. 271.] [1]

Circuit Court, District of Columbia. March Term, 1833.

**EXECUTION AGAINST THE PERSON—SECOND ARREST.**

1. It is a long-established principle of the common law that a man shall not be twice taken in execution for the same cause.

2. This principle is as applicable to the United States as to other creditors, and, under the

[1]: [Reported by Hon. William Cranch, Chief Judge.]

Maryland law, is as applicable to a ca. sa. for a fine as to a ca. sa. for any other debt.

[Cited in brief in Walker v. Com., 18 Grat. 23.]

The defendant [Tobias Watkins], having been arrested upon three writs of ca. sa. at the suit of the United States, returnable on the first day of the present term, was brought into court on that day, upon the motion of the attorney of the United States for this District, and by him prayed in commitment. The defendant, at the same time, moved the court to quash the writs, and to be discharged from custody, under the following circumstances, as stated by the chief judge in delivering the opinion of the court.

On the 14th of August, 1829, the defendant having been convicted on three indictments for misdemeanor at common law, and having been in close custody for three preceding months, was sentenced by this court to three months' imprisonment from that day, on each indictment, making nine months in the whole, and to pay certain fines, amounting altogether to $3,050, being the exact amount of the money of the United States, which the jury found he had fraudulently obtained, and for which he had not accounted. [See Case 16,649.]

THE COURT, however, did not order the defendant to stand committed, until those fines and costs should be paid; it not being the general practice of the court to make such an order, unless at the request of the attorney for the United States; and also knowing that it would be in the power of the United States to issue writs of execution for those fines, if they should deem it proper so to do.

On the 23d of September, 1829, the United States sued out three writs of fieri facias upon those judgments, returnable to the then next term (December term, 1829). Those writs were duly returned "nulla bona;" and on the 16th of February, 1830, the United States sued out three writs of ca. sa. on the same judgments, returnable to the then next May term (to wit, Monday, the 3d of May, 1830). The term of imprisonment, under the sentence, expired on the 16th of May, 1830. These writs of ca. sa. were not returned by the marshal at that term, nor was he called upon to return them; and nothing further appears upon the records of the court respecting them, until the 10th of January, 1833, when the court, being in session as of November term, 1832, they were filed in the clerk's office by the late marshal, with the following indorsement thereon: "Cepi, delivered over to my successor in office." On the 14th of January, 1833, being the first day of the term of the supreme court of the United States, the defendant applied to that court for a writ of habeas corpus, and a rule was served on the attorney general of the United States, to show cause why it should not be granted; and upon that rule the whole merits of the application were fully argued. The writ of habeas corpus was issued, and the defendant was discharged, by the supreme court, from the custody

of the marshal. [7 Pet. (32 U. S.) 568.] On retiring from the court-room, however, he was again arrested upon three new writs of ca. sa. upon the same judgments; which writs are the same first before-mentioned, and do not purport to be issued as alias writs, nor do they in any manner refer to or notice the former writs of ca. sa. They are, in all respects, like the former writs, excepting that they include some additional costs, bear teste on the 23d of January, 1833, and are returnable to the first day of the present term, namely, the fourth Monday in March, 1833. More than a year and a day had elapsed between the teste of the former writs of ca. sa. and that of the present writs. Upon these writs the defendant is now held by the marshal in close custody.

Mr. W. L. Brent, for defendant, upon his motion to quash the writs, contended:

1. That the former arrest upon ca. sa. and discharge by the supreme court of the United States upon habeas corpus, was a satisfaction of the judgment. 2. That the new writs of ca. sa. could not lawfully be issued without a scire facias to revive the judgments, as more than a year and a day had elapsed between the teste of the former and the present writs. 3. That the fines were excessive.

Upon the first, which was the principal point argued by the counsel, he cited the following cases and authorities to show that a new ca. sa. cannot issue after arrest upon the first, unless under some statute giving the right, not even with the defendant's consent: 2 Tidd, Prac. 1068–1071; Foster v. Jackson, Hob. 59, 60; 9 Petersd. Abr. 272, M., note at the bottom of the page; Dalt. Sher. 237; 11 Vin. Abr. 32, tit. "Execution," U, a, pl. 5, 12, 13, who cites Brooke, Abr. tit. "Execution," 151, 13 Hen. VII. p. 1; Fish & Wiseman's Case, Godb. 372; 1 Saund. 35; 2 Har. Ent. 460; Cappeau's Bail v. Middleton, 1 Har. & G. 154; 11 Vin. 24, tit. "Execution." T, a, pl. 12, 17; Jaques v. Withy, 1 Term R. 559; Tanner v. Hague, 7 Term R. 420; 5 Petersd. Abr. 27, 28, c. 8, tit. "Capias ad Satisfaciendum"; 2 Petersd. Abr. 221, letter I; Line v. Lowe, 3 Smith, 267, 7 East, 330; Wright v. Kerswill, Barnes, Notes Cas. 376; 4 Com. Dig. 238, "Execution," c. 10; 1 Rolle, Abr. 901; 4 Com. Dig. 255, "Execution," H; Pearsall v. Lawrence, 3 Johns. 514; Parsons v. Loyd, 3 Wils. 346; Blackburn v. Stupart, 2 East, 243; Yates v. Van Rensselaer, 5 Johns. 364; Belchier v. Gansell, 4 Burrows, 2502; Bishop v. Powell, 6 Term R. 616; 2 Petersd. Abr. 307. The case of West's Ex'x v. Hyland, 3 Har. & J. 200, is the only case which seems to admit a contrary doctrine. But that case is not correctly reported. It was a case of escape, which is admitted to be an exception to the general rule. (A certified copy of the record in that case was produced, which shows it to have been a case of escape.) If the case were doubtful, the judgment ought to be in favor of liberty. No ca. sa. in a criminal case, was

known at the common law; nor is it given in criminal cases by any English or British statute. In that country, the defendant is either committed for the fine, or if he is not present in court, the process is capias pro fine; by which the officer is to take and keep the defendant till the fine be paid. Under the Maryland statute of 1777, c. 13, which gives a ca. sa. for common-law fines, and which is in force in this county, the proceedings are required to be as in civil cases. If this proceeding would be irregular in a civil case it is irregular in a criminal case. The act of 1795, c. 74, only gives a ca. sa. in statutory fines, the statute of 1777 having given it in common-law fines.

Mr. Key, for the United States, contra.

If an arrest on ca. sa. be satisfaction, it is only a technical satisfaction; and the court will not discharge the defendant without actual satisfaction; even considering the fine as a debt. An arrest, alone, is not even technical satisfaction; it is such only so long as the arrest continues. To make it a satisfaction, there must be not only an arrest, but a discharge by consent of the plaintiff. The neglect to call upon the marshal to return the writ and bring in the body, and to pray him in commitment in execution, is not a consent by the plaintiff. A ca. sa. is only quousque, not a valuable execution. The body is only a pledge. It is only satisfaction while it is held. Blumfield's Case, 5 Coke, 86b, 88; 4 Com. Dig. 250, "Execution," H; Foster v. Jackson, Hob. 59; Vigers v. Aldrich, 5 Petersd. Abr. (Am. Ed.) 27; Nadin v. Battie, 5 East, 147; Sharpe v. Speckenagle, 3 Serg. & R. 465; Hecker v. Jarret, 3 Bin. 404; Little v. Newburyport Bank, 14 Mass. 443; Line v. Lowe, 7 East, 330. The consent of the plaintiff must be an actual assent; not an inference from a mere accident, or negligence. If Dr. Watkins had agreed to dispense with being brought into court and committed, the neglect to have him brought in is not a discharge. His consent to dispense with those matters of form may be implied from his long acquiescence. He was also in jail upon other ca. sas. in civil causes for debts due to individuals. The case of Line v. Lowe, 7 East, 330, does not apply. The arrest in that case was upon mesne process, and was superseded because he was not charged in execution within the time limited by the rules of the court. Tidd, Prac. 367–378. A plaintiff may have a ca. sa. upon a judgment in an action of debt upon a former judgment. These rules of practice were intended to prevent plaintiffs from depriving defendants of the benefit of the lord's act of 32 Geo. II., afterwards made perpetual, and other insolvent acts which only apply to debtors charged in execution. Barnes, 376, 383; Blandford v. Foot, Cowp. 72. If the rule of court did not extend to all arrests in execution on that judgment, it would not prevent the creditor from defeating the debtor of the benefit of the lord's act. Topping v. Ryan, 1

Term R. 273; Asheley v. Sutton, Barnes, Notes Cas. 380, tit. "Prisoners." The neglect to pray the defendant in commitment, was a mistake in a case of uncertain practice. It was a mutual mistake, not binding on the United States. The attorney of the United States had no authority to discharge the defendant, or to consent to his discharge. Crary v. Turner, 6 Johns. 51; Jackson v. Bartlett, 8 Johns. 361. The practice of this court is, not to have a prisoner who is in actual custody, brought into court to be committed in execution, especially when the return is, "Cepi in jail." The report of the case of West's Ex'x v. Hyland, is justified by the record. It was a second ca. sa. after arrest upon the first, upon which the defendant was not prayed in commitment. But this is really a criminal case, and the rule as to civil cases does not apply. The fine is a punishment, not a debt.

R. S. Coxe and Mr. Jones, in reply.

The opinion of the supreme court of the United States in Ex parte Watkins, at the last term [7 Pet. (32 U. S.) 568], was, that the ca. sa. must be proceeded upon throughout as in cases of personal actions; and that the omission to charge the defendant in execution was fatal, as to that execution. An arrest on ca. sa. is satisfaction, unless the defendant has escaped, or been rescued. In the case from 14 Mass. the general principle is maintained, but an exception was allowed in case of a temporary relaxation of custody and a voluntary return; and that case was upon an audita quærela, which is an equitable remedy. After an arrest upon a ca. sa. there can be no new execution upon that judgment, unless the defendant die in jail, and then a fieri facias is given by the statute of James. The case in 7 East, 330, is stronger than if the party had been charged in execution. The principle was established long before the insolvent acts of England. As the court did not decide the second and third points made by the counsel for the defendant, the argument of counsel upon those points is omitted.

CRANCH, Chief Judge, after stating the circumstances of the case, delivered the opinion of the court (nem. con.), as follows:

When the marshal, upon the return of a ca. sa., brings into court the body of the defendant, and the plaintiff prays him in commitment, the order to commit is made of course, unless cause to the contrary be shown. The counsel for the defendant, therefore, were called upon to show cause. The questions, involved in this discussion, have been fully and ably argued, and the court has attentively considered the authorities cited, and traced them to their sources, as far as the means they have had, and the intervals between the daily sessions of the court would permit.

The counsel for the defendant rested their motion to quash the writs of ca. sa. and discharge the defendant, upon three grounds: 1.

That the defendant could not lawfully be arrested and held in custody upon those writs after having been taken and discharged upon the former writs. 2. That these writs ought not to have been issued without previous scire facias, more than a year and day having elapsed between the issuing of them and of the next preceding writs. 3. That the fines were excessive, and amount to a sentence of perpetual imprisonment.

The first question is the most important, as it is one which affects the right of personal liberty; and is that which seems to have been mainly relied upon in the argument. The general principle is, that no man shall be arrested again for the same cause. This principle has been so long and so well established as to have become a maxim in law. "Nemo debet bis vexari pro eâdem causâ." This rule, according to the English practice, is extended to mesne process as well as to execution. Thus, after holding the defendant to bail, the plaintiff shall not discontinue his action because he does not like the bail, and again hold the defendant to bail for the same cause. Belchier v. Gansell, 4 Burrows, 2502. So in the case of Imlay v. Ellefsen, 3 East, 309, it was held, that one who was discharged out of custody upon an arrest in a former action, for default of the plaintiff in not declaring against him in time, cannot be holden to special bail under a second writ for the same cause, although the form of action be changed. The language of the judges, in that case, is not inapplicable to the present. Lord Ellenborough said, "It is likely enough that if the defendant, being a foreigner and not residing in this country, be discharged on filing common bail, the plaintiff will lose his debt; but that ought not to warp our judgment in applying the law to the facts disclosed to us. There are many cases in the books, where the plaintiff has been suffered to hold the defendant to bail a second time for the same cause of action; as where he has erroneously commenced his action, or mistaken his remedy, and has discontinued it in due time, without oppression or laches. But here the full time elapsed which the law allows for his detaining the defendant in custody upon the first arrest; and after his discharge he arrested him a second time, and requires the court to aid the former defect in his proceedings or proof, by continuing the defendant in custody for a further period for the same cause of action, which must be sustained by the same proof, and even something more than would have sufficed in the former action. It is harsh enough to deprive men of their liberty as a security for debt in the first instance; but after having continued the defendant in custody until the plaintiff lost the benefit of it by his own default, I should require a very strong case to induce me to consent to a further imprisonment." Mr. Justice Grose declared himself of the same opinion. Mr. Justice Lawrence said, "However ill the defendant may have behaved, we are not to punish

him by confining him in prison upon a second arrest for the same cause as before." Mr. Justice Le Blanc said, "The rule would be nugatory that a party should not be holden to bail a second time for the same cause of action, if, after the first arrest on which the defendant was detained in custody as long as the rules of law would admit, and from which he was discharged on account of the delay of the plaintiff in not declaring against him in time, the defendant should be again liable to suffer, by being holden to bail again in a second action for the same cause." So in the case of Blackburn v. Stupart, 2 East, 243, Mr. Justice Grose said, that "it would be very dangerous to permit the law to be unsettled in this respect; which is, that a person cannot be taken in execution twice on the same judgment, whether he had so agreed or not; and therefore, although the defendant's conduct had been very scandalous, yet the rule must be made absolute to set aside the execution, although the defendant had agreed to be taken again if he did not pay in a given time." So in Wright v. Kerswill, Barnes, Notes Cas. 376, if the defendant be superseded after judgment for want of being charged in execution within two terms after judgment obtained, his person cannot afterwards be taken in execution. The same point is decided in Line v. Lowe, 7 East, 330; in Blandford v. Foot, Cowp. 72; and in Topping v. Ryan, 1 Term R. 227, 273. So in Da Costa v. Davis, 1 Bos. & P. 242, it was held that the condition of a bond to surrender the defendant in execution after he has been once discharged, is void. So, also, in Vigers v. Aldrich, 4 Burrows, 2482, it was decided that a discharge of the defendant out of custody on a ca. sa. by consent of the plaintiff, upon a new agreement, not fulfilled, was a satisfaction of the judgment, so that it would not support an action of debt. So in Jaques v. Withy, 1 Term R. 557, it was held that the discharge of a debtor from a ca. sa. with the consent of the plaintiff on a new agreement founded on a consideration which failed by reason of informality in the security given, was so far a discharge of the judgment that it could not be set off in a cross suit brought by that debtor against his creditor. Whether the particular decision in that case would now be considered as law, is immaterial; the principle, so far as a discharge of the person of the debtor is concerned, has never been denied, and is in accordance with this whole class of cases. Mr. Justice Ashhurst said, "But at all events the discharge from execution is certainly a discharge at law. I know of only one case where a debtor in execution who obtains his liberty, may afterwards be taken again for the same debt; and that is where he has escaped; but the reason of that is, that he is not legally out of custody. But where a prisoner obtains his discharge with the consent of the party who put him in execution, he cannot be retaken." Mr. Justice Buller, after observing that the security was

good at the time it was taken, but that it afterwards became void, said, "That, however, arose from the neglect of the defendant himself in not complying with the directions of the statute." "And the debt, having been once extinguished, cannot be revived again. This is not a new question. The case of Vigers v. Aldrich, goes the whole length of this; for it shows that if the defendant has been once discharged out of execution upon terms which are not afterwards complied with, the plaintiff cannot resort to the judgment again, or charge the defendant's person in execution. So here, if the plaintiff has neglected to avail himself of the advantage of the security, it is his own fault, and he must take the consequences."

The same rule of law is also recognized in Basset v. Salter, 2 Mod. 136; Thompson v. Bristow, Barnes, Notes Cas. 205; and Clarke v. Clement, 6 Term R. 525, where it is also decided that a discharge of one joint defendant from execution is a discharge of the others; and Lord Kenyon, in delivering the opinion of the court, recognizes the authority of the case of Foster v. Jackson, Hob. 52, in which it was decided before St. 21 Jac. c. 24, that if the debtor died in execution the judgment could not be revived against his executors. So in Tanner v. Hague, 7 Term R. 420, where the defendant had been discharged from execution, upon his undertaking to pay the debt at a future day; on nonpayment of which the plaintiff sued out a fieri facias against him. Upon a rule to show cause why the writ of fi. fa. and the proceedings under it, should not be set aside, it was contended by Erskine for the plaintiff that the release of the defendant was conditional; and that as the condition was not performed the plaintiff had a right to sue out another writ of execution. The counsel on the other side, relied on the cases of Vigers v. Aldrich, Jaques v. Withy, and Clarke v. Clement; and contended, "that there is only one case, in which the plaintiff can retake a defendant who has been once in execution; namely, the case of an escape." "The court said that the cases cited proceeded on this ground, that it was considered that the plaintiff received a satisfaction in law by having his debtor once in custody in execution; and on the authority of those cases, they made the rule absolute." So in Walker v. Alder, Style, 117 (Trin. 24, Car. B. R. 1671). With the plaintiff's consent, the defendant, who was in execution, came to the plaintiff out of the prison, thinking to make some agreement with him; but no agreement being made, the defendant was taken again, on the same execution. The defendant brought his audita quærela, and "adjudged by the court to be well brought for the execution was discharged by the prisoner's going at large; and therefore he could not again be taken upon it." So in Price v. Goodrick, Style, 387,

Mich. 1653, Banc. Sup. "It was said by Roll, C. J., if there be a judgment against three, and one of them is taken in execution and be afterwards set at large by the plaintiff's consent; if any of the other two be afterwards taken in execution upon the same judgment, he may have an audita quærela." So also in Fish's Case, Godb. 372 (3 Car. Anno 1627). Mr. Justice Dodridge said, "If the execution be lawful, and upon lawful process, and the party be delivered out of execution, then he shall not be taken again in execution. But if he be taken upon an erroneous process, and he be delivered out, he may be taken again in execution, for the first execution is erroneous, and is no record, being reversed." So in the Year Book, 8 Hen. VII. 9, 10 (Brooke, Abr. "Execution," pl. 92; Anno 1491). "Error was brought in the rendition of judgment in a writ of debt, and of the proclamation of outlawry therein; and he found main-pernors, but he did not keep his day, and the plaintiff in the debt, prayed a capias for execution. Mordant: He was in execution by the mainprize, and therefore he shall have no other execution. The Court: He was not in execution, for the recognizance was only to the king. Quod nota," says the reporter, "And here it appears, once executed, executed forever" ("unfoits exec' 6 pro imperpetuo"), "for he shall not have execution again." So in the Book of Assizes (Liber Assisarum; Anno 1372) fol. 22, pl. 43, Brooke, Abr. "Execution," pl. 79. "In trespass, note that if a man have judgment against another for debt or damages, and take his body in execution the plaintiff shall not have elegit, nor fieri facias; quod nota, for the taking of the body, at his suit or prayer, is full execution. And see elsewhere, that if he die or escape the plaintiff shall not have other execution." (There are several of these old cases in which it is said that if the defendant escape the plaintiff shall not have other execution, and such was the law held to be in those days, but it is now settled that escape is an exception to the general rule.) So also in 33 Hen. VI. 47 (Anno 1455; Brooke, Abr. "Execution," pl. 8). "In debt it was conceded in argument that if a man take the body in execution by ca. sa. and the party die in prison he shall not have other execution; but if he escape, the party shall have an action of account against the warden" (that is, the warden of the Fleet Prison), "per prisot et per davers." And in 13 Hen. VII. 1 (Anno 1497) Brooke, Abr. "Execution," 151, it is said by Keble, J., "If the sheriff return cepi corpus upon a ca. sa. the plaintiff shall not have other execution." And again, in Shaw v. Cutteris, Cro. Eliz. 850 (Mich. 43, Eliz. B. R. Anno 1601). "It was moved, whether the party in execution dying before satisfaction made, the plaintiff may now have a new execution of this judgment" (against the administrator), "and all the court held that he could not; for although

it were said that he had his body in execution only as a pledge for his debt, and the party dying, the debt is never a whit the more satisfied; and if two be taken in execution, and one of them dies, the other shall remain in execution, for the debt is not satisfied by his death; as 33 Hen. VI. 48 is; and it was so cited to be adjudged (26 Eliz.) in the common bench betwixt Johns v. Wilcocks; yet they held that, in regard the plaintiff hath elected this execution (which is the highest execution), and the defendant died therein, the law will adjudge it as a satisfaction, when there is but one taken. But where two be condemned, the taking of one in execution is no discharge for the other." The same point came before the king's bench again in a more formal manner, and was expressly adjudged in the case of Williams v. Cutteris, Cro. Jac. 136, 143 (4 Jac. Anno 1606). It was scire facias against an executor to show cause why the plaintiff should not have execution of a judgment against his testator. The defendant pleaded that his testator died in execution upon a ca. sa. issued upon the same judgment. To this plea the plaintiff demurred, because that execution was not satisfaction; "and it was prayed, inasmuch as he did not plead that satisfaction was given, therefore execution might be awarded. But Tanfield and Yelverton (the other judges being absent) held that the bar was good; for when the body of the party is taken in execution, although it be not, in itself satisfaction, yet, as to him, there cannot be any other execution. But if two had been condemned, although the one of them dies in execution, that is not any discharge for the other, because the execution is against both, and it is not satisfaction until the condemnation is satisfied. Yet when execution is against one only, the judgment being against one only, when he dies, no other execution can be against his goods or lands than was in his lifetime; wherefore they held the bar to be good. But because it was a new case, and had not formerly been adjudged, they would be advised," and they took time till the next term to consider. At Hillary term, the same year (Cro. Jac. 143), the case was moved again, "and Popham, Williams, and Tanfield, held that the plea was good; for when execution is awarded against one person only, and by a ca. sa. his body is taken in execution, and is returned, it is an absolute and perfect execution against him, and no other execution can be had against him, his lands, or goods; and although the law saith that it is no satisfaction in itself, yet it is so high that there cannot be any other execution; and when he dies the execution is determined as to him; and there cannot be any other execution of his goods or lands; and not like the case where two are condemned, and the one is taken in execution and dies, yet execution may be against the other; because it is not any satisfaction, and process

is not determined against the other; but where the one only is in execution and dies. the executor is discharged, and there cannot be any new execution. Yelverton doubted thereof, because it is clear that his body is but a pledge for his debt, and is not any satisfaction in itself; wherefore he said it is not reasonable that the party plaintiff should be deprived of all his remedy by his death. But, notwithstanding, it was adjudged for the defendant." The same point was afterwards decided by the court of common pleas, in 12 Jac. (Anno 1614), in Forster's Case, Moore, 857. That was also a scire facias against executors, to revive a judgment against their testator. The defendants pleaded, in bar, that their testator died in execution upon the same judgment; upon which plea, issue was joined, and the jury found a special verdict, which the court adjudged for the defendant. The third question argued, was, "Whether the death of the defendant in execution is a discharge of the execution;" or, as it is stated by Chief Justice Hobart, in his Reports, p. 56, "Whether a man taken in execution, for debt, and dying in execution, the debt be absolutely discharged by his death, as against him." "And all the justices argued the case; and they all agreed, except Winch, that this was a discharge. And they cited a judgment in point, between Williams and Cutteris, Cro. Jac. 136, 43 Eliz. rot. 88, contrary to Blumfield's Case, in 5 Coke, wherefore judgment was given against the plaintiff. Note. Pasch. 43 Eliz. in R. R. rot. 88, in Williams and Catheridge's Case, it was adjudged a full execution by the death, &c." The opinion of Lord Hobart is given, at full length, in his Reports (pages 52 to 62), where, speaking of executions that have effect, in part, he says (page 59), "But, if a capias be executed, that is in law sufficient for the whole debt, for corpus humanum non recipit æstimationem, so that, if you take it at all, you must take it for the whole debt. And again, I hold that a capias ad satisfaciendum is against that party, as not only an execution, but a full satisfaction by force, and act, and judgment of law; so as, against him, he can have no other, nor against his heir or executor, for these make but one person in law." Such was the law previous to the 21st of James, notwithstanding the dictum of Lord Coke, in Blumfield's Case, that in an action in the common pleas, between Jones and Williams [1 Rolle, Abr. 903], "it was resolved by the whole court, that, if the defendant in debt dies in execution, the plaintiff may have a new execution by elegit, or fieri facias." For that was the case of two men condemned in debt, and one was taken. and died in execution, and yet it was held that the taking of the other was lawful; and such, also, was Blumfield's Case. Neither of them, nor any other of the cases cited by Lord Coke, supports his dictum, as a general proposition, "that, if the defendant in debt

dies in execution, the plaintiff may have a new execution by elegit or fieri facias." And in Sir Edward Coke's own case, the great case of prerogative (Godb. 294). Chief Baron Tanfield said, "If a common person arrest the body in execution, he shall not resort to the lands; contrary to Blumfield's Case, 5 Coke." So, also, in Foster and Jackson's Case, Hob. 60, Lord C. J. Hobart says, "It is a prerogative of the king to have execution of the body, lands, and goods not communicated to the subject but in case of statute-merchant and staple, and recognizance of that nature, which is by the statute law; and therefore the case put in Blumfield's, that, where a party was taken in execution upon a statute, and died, and yet execution was had against goods and lands, after, is nothing in this case, for they were all due, at the first, and therefore might be taken at once, or severally." So, also, in Cave v. Fleetwood, Lit. 325, 5 Car. Anno 1629, the plaintiff's counsel having cited Blumfield's Case, to prove, that, if the defendant die in execution, the plaintiff may have elegit; and that it is satisfaction that the law regards, "Hutton, J., said that Blumfield's Case is not law; for, if the party die in execution upon capias, the plaintiff had his execution, and shall not have any execution again; and so was Jackson's Case adjudged in this court; and the making of the statute of 21 Jac. shows, that so the law was held." So universal was the rule held to be, that the plaintiff should not take the body of the defendant twice in execution, for the same cause, that it was even doubted whether a member of parliament, discharged temporarily, by writ of privilege, could be taken again for the same debt. Thus, the preamble to the statute 1 Jac. c. 13 (Anno 1604), recites: "Forasmuch as, heretofore, doubt hath been made if any person, being arrested in execution, and by privilege of either of the houses of parliament, set at liberty, whether the party at whose suit execution was pursued, be forever after barred and disabled to sue forth a new writ of execution in that case; for, avoiding all doubt and trouble, which, in like cases, may hereafter ensue, be it enacted, &c., that the party at whose suit. &c., after such time as the privilege of that session of parliament, in which such privilege shall be so granted, shall cease, may sue forth and execute a new writ or writs of execution in such manner and form as, by the laws of this realm, he or they might have done if no such former execution had been taken forth or served." So, also, the preamble of the 21 Jac. c. 24 (Anno 1623), says: "Forasmuch as, heretofore, it hath been much doubted and questioned if any person, being in prison, and charged in execution. by reason of any judgment against him, should happen to die in execution. whether the party at whose suit, or to whom such person stood charged in execution, at

the time of his death, be forever after concluded and barred to have execution of the lands and goods of the person so dying; and, forasmuch as daily experience doth manifest that divers persons of sufficiency of real and personal estate, minding to deceive others of their just debts, for which they stood charged in execution, have obstinately and wilfully chosen rather to live and die in prison than make any satisfaction according to their abilities, to prevent which deceit, and for the avoiding of such doubts and questions hereafter, be it declared, explained, and enacted," &c., "that the party or parties at whose suit, or to whom any person shall stand charged in execution, may, after the death of the said person so charged and dying in execution, lawfully sue forth and have new execution against the lands and tenements. goods and chattels, or any of them, of the person so deceased, in such manner and form, to all intents and purposes, as he, or they, or any of them might have had by the laws and statutes of this realm, if such person, so deceased, had never been taken or charged in execution." Thus stood the law in relation to execution by capias, when the charter of Maryland was granted, on the 20th of June, 8 Car. (Anno 1642). The emigrants, under that charter, brought that law with them, together with all such other rights of English subjects as they could enjoy in their new situation. These rights were expressly guarantied to them by their charter, and were, at the revolution, confirmed to their descendants, by the constitution and bill of rights of the state of Maryland. When this part of the district was separated from Maryland, that law, and those rights were expressly continued in force here by the act of congress of the 27th of February, 1801 (2 Stat. 103), and as modified by the statutes of Maryland, prior to that date, and by acts of congress since, now constitute the law of this part of the district.

Maryland continued to adopt, from time to time, such of the statutes of England as were applicable to her situation, up to the time of the Revolution, and kept pace with the judicial tribunals of England, in their modification and extension of the rules of the common law. Hence, the decisions of those tribunals have been considered as authority in the cases to which they are applicable. The law of execution by capias, therefore, as it existed in England, at the time of the Revolution, was the law of Maryland on the 27th of February, 1801, unless altered by the statutes of that state. We are not aware of any such alteration as can affect the present case. The general principle remains as it was at the time of the charter, to wit, that no person shall be twice taken in execution upon the same judgment. The case of escape is the only exception recognized by the common law; and the reason of that exception is stated by Mr. Justice Ashhurst, in 1 Term

R. 557, to be, that the defendant is not legally out of custody; and even that exception was, for a long time, denied or doubted; and even as late as 8 & 9 Wm. III. (Anno 1697), it was thought necessary to pass an act (8 & 9 Wm. III. c. 27, § 7), authorizing the plaintiff to retake the prisoner by a new capias, or to sue forth any other kind of execution on the judgment, as if the body of such prisoner had never been taken. A discharge under the insolvent law is no exception to the rule; for, the body of the debtor, once discharged by an insolvent law, from execution, cannot be lawfully taken upon a new capias. The case of privilege of parliament, which is provided for by the statute of 1 Jac. c. 13, does not apply to this country. The case of West's Ex'x v. Hyland, 3 Har. & J. 200, as there reported, seemed to have recognized a new exception to the general rule. The marginal note of that case is thus: "Where a ca. sa. is returned cepi, and the plaintiff does not proceed to enforce the writ by having the defendant committed, defaulting the sheriff, or having it entered 'not called,' it does not preclude the plaintiff from taking out a new ca. sa." We have been furnished with a transcript of the record of that case, from the court of appeals; and although every thing stated in the marginal note is true, yet the printed report of the case does not state the fact that the defendant had escaped, and that, therefore, the court refused to quash the second ca. sa. and discharge the defendant. By the transcript of the record, it appears that, upon the return of the first ca. sa. (which was returned cepi), the sheriff of Somerset had not the defendant in court, having suffered him to go at large. That the sheriff left the court two days before the close of the session; and that, on the day after the sheriff had left the court, the defendant, for the first time, came in, but there was then no sheriff there to whom he could be committed; so that the defendant did not appear at the court, in the custody of the sheriff, as stated in the report. This was clearly an escape; for, in the case of Koones v. Maddox, 2 Har. & G. 106, it was decided by the court of appeals of Maryland, "that an action of debt will lie against a sheriff, who, having arrested a defendant on a ca. sa., permitted him to go at large until the return-day of the writ, although the sheriff then brought the defendant into court." The case of West's Ex'x v. Hyland, therefore, instead of furnishing a new exception to the general rule, is a strong confirmation of it, and shows that the only exception, at common law, is the case of an escape. No man knew the law or practice of Maryland better than Luther Martin, who had been in full practice nearly half a century, and who was the counsel of the plaintiff, in that case; and his affidavit, which was filed in the cause, upon the motion of the defendant's counsel, to set aside the second

ca. sa., shows that, in his opinion, the return of "cepi" upon the first, without further proceeding, operated as a discharge of the defendant, unless the plaintiff could show that it was a case of escape. His reply, therefore, to the motion of the defendant's counsel, was as appears by the record, that the defendant, before the last ca. sa. was issued against him, and after the first had been served upon him, escaped from the custody of the said sheriff. The fact of the escape having been proved by the affidavit of Mr. Martin and Mr. Polk, the court refused to set aside the writ, and to discharge the defendant; and the record then proceeds thus:—"And the said Lambert Hyland, being called, appears, and it being demanded of him whether he be the same person taken in execution at the suit of the said Hannah West, executrix as aforesaid, confesses that he is, and that he hath not the money to satisfy to the said Hannah West, executrix as aforesaid, the debt, damages, costs, and charges aforesaid; whereupon, on the prayer of the said Hannah West, executrix as aforesaid, by her attorneys aforesaid, the said Lambert Hyland is, by the court, now here committed to the custody of the sheriff of Somerset county aforesaid, in execution for the debt, damages, costs, and charges aforesaid, at the suit of the said Hannah West, executrix as aforesaid, there to remain until," &c., "and the said sheriff being here present, takes charge of the said Lambert Hyland accordingly, &c." The court of appeals sat at Easton, in Talbot county. The ca. sa. was directed to and returned by the sheriff of Somerset county. This record is also proof of the practice in Maryland, to require the defendant who has been arrested upon a ca. sa. to be brought before the court upon the return day of the writ, and committed in execution as a justification of the sheriff for holding the defendant in custody after that day. That the general rule, as modified by the statutes of 1 & 21 Jac. and 8 & 9 Wm. III., with the single exception of escape, remains as it was at common law, appears in Tidd, Prac. (Troubat's Ed.) 196, 1033, 1034, 1068, 1069, and 1 Saund. (Williams's Ed.) 35. That it prevails also in other states than Maryland, appears in the case of Yates v. Van Rensselaer, 5 Johns. 364, where the court said, "Though we may say, in the language of Justice Grose (2 East, 244), that the attempt, on the part of the defendants, to get discharged of the debts, is scandalous, yet the rule of law is settled." And in Freeman v. Ruston, 4 Dall. [4 U. S.] 217, where the court observed, "The case appears so clear to us, that we do not wish another moment for consideration. The law is settled in England, that a ca. sa. operates as a satisfaction of the debt; as an extinguishment of the lien of the judgment. We have no other rule prescribed to us in Pennsylvania, nor can we perceive that there would be any policy or justice in departing from it." Such, therefore, being the general

principle, so long and so well established, it is incumbent upon the United States to show, either that they are not bound by the general rule, or that they are within some exception to it. In the first place, it is said that the rule only applies to civil cases, and that this is a criminal case, and therefore not within the rule. The answer to this objection is, that the United States are only authorized to issue a ca. sa. for a fine by the law of Maryland which they have adopted for this part of the district, and which, in giving the writ, expressly requires that "such proceeding should be had thereon as in cases where similar writs are issued on judgments obtained in personal suits." The United States must take it as it is given; and when they do take it, they must proceed civiliter, and not criminaliter. The nature of the proceeding is changed; and the state of Maryland, by giving the civil remedy, has, in effect, agreed that she will so far waive any prerogative attached to her criminal jurisdiction. The United States, by adopting the same remedy, must do the same. This point, we think, was decided by the supreme court of the United States, in Ex parte Watkins (at the last term) 7 Pet. [32 U. S.] 568, when they admitted that the United States were bound by the Maryland practice in regard to excution by ca. sa. in civil causes. But if the United States are bound by the general rule, it is said that the general rule is confined to the case of a discharge with the consent of the plaintiff. This position is not supported by the authorities cited. Blumfield's Case, 5 Coke, 86b, is the strongest; but the authority of that case is denied in several subsequent cases; and in some, the dicta which appear to give some countenance to the position assumed, on the part of the United States, are expressly overruled, as has been before noticed. There is no pretence that the defendant escaped. On the contrary, he was discharged by the supreme court of the United States, upon habeas corpus, because the marshal had not, according to the exigency of the writ, and the practice of Maryland in like cases, any authority to detain him beyond the return term of the writ, unless under a commitment by the court at the prayer of the plaintiff; and in that case the United States did not pray him in commitment. The United States might have had the full benefit of their judgment and execution, but did not avail themselves of it. To this, however, it is objected that it was either the neglect of the marshal in not bringing in the defendant, or of the attorney of the United States in not calling on the marshal to bring him in; and that the United States are not bound by the neglect of their officers. This objection, we think, is also answered by the judgment of the supreme court, in the case Ex parte Watkins [supra], at the last term. For the objection was as valid then as it is now; and if the United States were not bound by the neglect of the marshal to bring in the defendant

at the return of the first ca. sa.; and of the attorney of the United States to pray him in commitment, then the case would have stood before the supreme court, as a case in which the marshal had brought in the defendant at the return of the writ, and as if the attorney of the United States had prayed him in commitment; and then that court could not have discharged him on the ground they did; for the only ground, upon which he was discharged by that court, was that the United States had neglected to have the defendant brought into court at the return day of the writ, and prayed in commitment. The same answer may be made to the supposition that the omission to have the defendant committed was caused by the mistake of the officers of the United States as to the law or the practice of the court. The objection was as valid in the case before the supreme court as it is here. But if it were not so, the United States having, by taking the writ of ca. sa. under the law of Maryland, placed themselves, so far as the proceedings are to be carried on under that writ, upon the ground of an individual in a personal suit, are equally liable to lose the benefit of the writ by the neglect of their officers to pursue it to its full effect. It may be proper to notice some expressions in some of the cases cited on the part of the United States, which, from their generality, may be supposed to favor the construction given to the general rule by the counsel of the United States. It may be observed of the cases in which it is said that the taking of the body is good execution, but is not satisfaction, that they are cases where there was judgment against two or more defendants, and one of them taken in execution. In those cases, the taking of one was not satisfaction as to the others. Such was the case, 29 Hen. VIII., Brooke, Abr. "Execution," pl. 132; and Blumfield's Case, 5 Coke, 86b; and the Anonymous Case in Moore, 29, c. 96; and Cowley v. Lydeot, 2 Bulst. 97; and Whiteacres v. Hamkinson, Cro. Car. 75; and Rosser v. Welch, Godb. 208; Shaw v. Cutteris, Cro. Eliz. 850; Williams v. Cutteris, Cro. Jac. 136, 143; Price v. Goodrick, Style, 387; and Clarke v. Clement, 6 Term R. 525.

The language of Mr. Justice Baldwin in delivering the opinion of the supreme court of the United States in the case of Tayloe v. Thompson, 5 Pet. [30 U. S.] 370, has been cited to show, that in every case of the discharge of a defendant from execution upon a ca. sa., without actual payment of the debt, or the consent of the plaintiff, he may have a new ca. sa., and arrest the defendant again upon the same judgment. The only point decided in that case, in relation to the question in this, was, that the arrest and escape of Glover upon a ca. sa. did not destroy the lien of the judgment upon Glover's lands; and that was the whole extent to which it was necessary, in that case, to lay down the law as to the effect of a commitment of the body in execution. The language of the opinion, however, is:—"The greatest effect which the law gives to a commitment on a ca. sa., is a suspension of the other remedies on the judgment during its continuance; whenever it terminates, without the consent of the creditor, the plaintiff is restored to them all, as fully as if he had never made use of any." Whether the negligence of the creditor, in not pursuing his remedy, whereby he lost the benefit of the arrest, would be considered as evidence of his consent to the termination of the commitment, might be doubtful; but it cannot be admitted that the court would have decided, that if the plaintiff has once had the body of his debtor in execution, and by his own negligence loses the full benefit thereof, without any fault on the part of the defendant, he may have a new ca. sa., and again take the body in execution on the same judgment. Lord C. J. Hobart, in Foster v. Jackson, Hob. 57, says, "Neither can the body be taken for a time, or for part, as in a fieri facias, but it must be totally and finally during his life." And, in page 59, he says, that "if a capias be executed, that is, in law, sufficient for the whole debt, for the value of the human body, cannot be estimated." It is but just and fair, in construing the language of a judicial opinion, to consider it in reference to the point of the case, and to understand the court as not intending to extend the doctrine advanced beyond the limit necessary to support the decision. All beyond that, must be considered as dictum, and of no greater weight than that of the authorities by which it is supported. The case of Cedwise v. Gelston, 10 Johns. 517, has also been mentioned; but in that case the debtor was never charged in execution; and because he had not been so charged, Chancellor Kent decided that the surrender of him by his bail, to the sheriff, after judgment, and his release from the custody of the sheriff, by the order of the plaintiff, without taking him in execution, did not discharge the lien of the judgment upon the lands of the defendant. These dicta are wholly insufficient to unsettle the long established principle of the common law, that a man shall not be twice taken in execution for the same cause.

Being of the opinion that the United States, when proceeding under the adopted law of Maryland, are bound by that principle; and that, in the present case, they do not come within any known and established exception to that rule; and it being also apparent that the defendant has been twice taken in execution upon the same judgment, and is now held in custody under the second execution, without any fault on his part that can deprive him of the benefit of the rule, we deem it our duty to order him to be discharged.

This opinion renders it unnecessary to express any opinion upon the other two points made in the argument. The motion of the attorney of the United States to commit the defendant upon these writs is overruled, and the writs are ordered to be quashed, and the

defendant to be discharged from the custody of the marshal. See, also, Franklyn v. Thomas, 3 Mer. 225.