Mr. Justice DAVIS,
also dissenting.
I concur in the views taken by the majority of the court in its opinion respecting the constitutionality of the acts of Congress under review, but I dissent from the disposition which is made of the case, believing there are errors in the record, entitling the plaintiff in error to have the judgment of the court below reversed. This is a proceeding in rem, and by the course of procedure in admiralty and revenue cases, to which it is assimilated, is conducted differently from suits at common law, or in equity, where there is actual service of process on the person.' But all cases in court, proceed on the idea of notice to the party whose property is to be affected. This is a fundamental principle, underlying the whole structure of judicial proceedings, regardless of the form they may assume in the particular court in which they may be instituted. In courts of admiralty, and for hearing revenue eases, seizure of the thing is regarded as equivalent to personal service, on the ground that the person whose property is seized, has intrusted it to the care of some one who has the power and whose duty it is to represent him and assert his claim.*
*329 It can be readily seen that in case tangible property which is capable of actual possession is seized, the interests of the owner will be protected by the person in whose custody it is placed. But it is different with intangible property, such as stocks in corporations, which, in their very nature, are incapable of seizure as other property. This species of property does not require to be left in charge of any person for its securit}’ and preservation, and it is evidenced by certificates which are, presumptively, in the possession of the owner of the stock, wherever he may be. How, then, can it be said that the mere service of notice on the officers of the corporations in which these stocks were held, either gave notice to the owner of the property, or brought the res within the control of the court ? In no sense had they the control of the property, or were they the agents of the owner, or bound to appear and defend his interests. There certainly did not exist betw’een them the legal relation, which raises the presumption in other cases, that the custodian of the property seized, will appear and defend the owner’s interests. In point of fact, it may happen that the officers of the corporation are in direct hostility to the interests of the stockholders, and in this particular case it is fairly to be inferred, that the possible thing did actually occur. It is, therefore, very clear that the manner in which these stocks purport to have been seized, did not satisfy the requisites of a revenue seizure, nor convey any notice to Miller, or to any one, sustaining a fiduciary relation to him, of what w'as done. Nor was his condition improved by the publication of notice, because he lived in an insurgent State, and any attempt to communicate to him the contents of the publication was forbidden, and would, therefore, have been illegal.
But, it may be asked, is there no w'ay in which this species of property can be made the subject of legal process?
The answer is, that it can only be done by statute, which shall point out the mode of proceeding. In such a case the principle of notice is preserved, for the owner is-advised that •his property can be condemned, and the manner of its condemnation, and naturally, in this condition of things, if it *330 were possible, he would delegate to some one the authority to look after his interests. But stocks cannot be seized, in the absence of any statutory provision on the subject, and the law has failed to make such provision. It is a casus omissus, undoubtedly, but it is not the province of this court to supply the omission. This difficulty was felt by the Attorney-General, because, in his instructions to the district attorneys, he directs that' stocks shall be seized according to the methods prescribed by the State laws.
But in Michigan, there is no law which authorizes the taking of stocks on mesne process, and I cannot see how the fact, that they may be taken on final process in that State, tends to support the argument that the method pursued in this case to seize the property in the first instance was proper and legal.
But apart from this view of the subject, which, in my opinion, is' fatal to the recovery in this case, there, is an irregularity in the proceedings, which should reverse the judgment and send the case back for a new hearing.
There are two acts of Congress relating to the condemnation of enemies’ property — one was passed in 1861, and the other in 1862. They differ materially in regard to the grounds on which condemnation can be placed. Besides, the act of 1861 divides the proceeds with the informer, which is not the case under the act of 1862. The libel sets forth every ground of condemnation under both acts, while the decree, in condemning the property, does not find any fact by reason of which it could be forfeited to the United States at all. This, in itself, is sufficient to reverse the decree. But as the decree divides the proceeds with the informer, the court must necessarily have found the property confiscable under the act of 1861, and yet if the evidence in the case, consisting of an. affidavit, made in New York, of one Thatcher (who, iu some way not disclosed in the record, was able to get down to Virginia in 1863, hunt up Miller, and have a private conversation with him), tends to prove anything, it is that the property wasconfiscable under the act of 1862. As this is a direct pro *331 ceeding to reverse the judgment, these irregularities are grounds of error.
Dor these reasons, in my opinion, tbe decree in this case should be reversed.

 Mankin v. Chandler, 2 Brockenborough, 127; Rose v. Himoly, 4 Cranch, 277; The Mary, 9 Id. 144.