## THE DECISIONS

OF

# THE SUPREME COURT OF ALABAMA;

AT

JANUARY TERM, 1838.

WYMAN et al. *vs.* CAMPBELL et al.

1. The several statutes of this State, passed in 1818, 1820 and 1822, touching the jurisdiction of the Orphans' court, in relation to a sale of the estates of deceased persons, are all in force, and must be construed together,—there is no want of harmony between them.

2. And if there were, the law never favors the repeal of a statute, by implication, unless the repugnance be apparent, or in their operation they be irreconcilable.

3. The Orphans' court derives its entire jurisdiction, in reference to an order of sale of the real estate of deceased persons, from the legislation of the State ; and if no warrant can there be found for the acts of the court, those acts must be taken to be *coram non judice.*

4. Proceedings in the Orphans' court, in order to a sale of the realty, are *in rem*, against the estate of an intestate, and not

*in personam;.* and therefore plenary jurisdiction is vested in the court, over *the thing*, though the party in interest be not notified of the pendency of the proceeding:—the Orphans' court acquires a *potential* jurisdiction over an estate, by the death of an ancestor, and such jurisdiction is in actual exercise, when the court assumes to act upon the report of commissioners, who disclose the fact, that a division of the estate can not be equitably made without injury to the heirs.

5. The judgment of a court having jurisdiction of the parties, and the subject matter, is conclusive upon parties and privies —notwithstanding the record may abound with irregularities, which would authorise the reversal of the judgment by a revising court : and if the proceeding be *in rem*, jurisdiction may well attach *quo ad the thing*—though the person of the defendant be not reached by process.

6. And an order cr decree of the Orphans' court, in a case *within its jurisdiction*, like judgments or decrees in the ordinary course of judicial proceedings, would not be *void*, or be collaterally impeachable ;—though the proceedings may discover errors, for which an appellate court, if directly appealed to, should reverse.

7. In case of an order for a sale of property, which sale has taken place,—if a judgment be reversed for error, in the record, the defendant can only obtain restitution of the money, while the purchaser shall hold the property.

8. And so, where an administrator omits to give a bond, on a sale of real estate, according to law—the omission does not avoid the sale,

9. Where particular forms are pointed out for the execution of a power, however immaterial they may appear in themselves, these forms are considered as conditions, the observance of which can not be dispensed with, and it is neceeasry that an administrator should do every thing required by the order of

the court to be done *previous to the sale*, or the sale passes no title.

10. But the purchaser can not be prejudiced by the omission of an administrator, to perform an act incumbent upon him, *after the sale.*—The interest acquired by the purchase, can not be lost, by a failure, on the part of the administrator to make a return to the Orphans' court, of the proceedings under the order authorising the sale.

Error to the Circuit court of Montgomery county. Trespass to try title. At the March term of the Circuit court of said county, eighteen hundred and thirty-four, David Campbell, Eliza Campbell, Emily Fountain, children of Archibald Campbell, deceased, Robert Fountain, (husband of said Emily,) also Archibald Campbell, Maria Campbell and Mary Campbell, likewise children and heirs of Archibald Campbell, who had departed this life, intestate, declared against Sol. Smith, Bushrod W. Bell, and Justus Wyman, in custody, &c.—For that, the said plaintiffs, on a certain day, theretofore, were seized in their own demesne, as of fee, of a certain messuage or close, situate, lying and being in the town of Montgomery, in the county and State, &c., known and described in the plan of the said town, as lot number three, on the South side of Washington street, measuring in front, fifty feet, and running back one hundred and sixty feet—the same forming an oblong square. And, being so seized, as aforesaid, the said defendants, afterwards, to wit, on the day and year aforesaid, at Montgomery, aforesaid, with force and arms, broke and entered the said close, and did then and there eject, expel and disseize the said plaintiffs, of the messuage or close aforesaid, and did keep and maintain possession thereof, enjoying the rents and profits of the same from thence hitherto—to the great wrong and injury of the plaintiffs, and against the peace and dignity, &c.

And for that, also, the said plaintiffs, on the day and year last aforesaid, were seized and possessed of a certain other messuage or close, together with one Susan Campbell, by descent from Archibald Campbell, who died before that time, intestate; which said messuage or close was known and described as lot number three, on the South side of Washington street, of the town of Montgomery, situate in the county and State aforesaid. And being so seized, as aforesaid, on the day and year aforesaid, at the county aforesaid, with force and arms, one John Harper did break and enter upon the said messuage, and close, and did then and there eject, expel and disseize the said plaintiffs and the said Susan. Which said messuage and close, through the said Harper, did, afterwards, come to the said defendants, who had maintained their possession thereof, against the said plaintiffs, and enjoyed the rents and profits of the same.

And the plaintiffs averred, that after the expulsion and ejectment aforesaid, the said Susan Campbell died intestate. By means whereof, an action had accrued to the said plaintiffs, to have and demand of the said defendants, the premises aforesaid, so detained by the said defendants, to their great wrong and injury, against the peace and dignity, &c., and to the damage of the plaintiffs, &c.

To this declaration the defendants plead *non culpabilis* and *liberum tenementum,* upon which issues were taken.

And at the March term of the same court, eighteen hundred and thirty-five, came a jury of good and lawful men, who being duly sworn, well and truly to try the issue joined, on their oaths, said, they found that lot number three, on the South side of Washington-street, in the town of Montgomery, the premises described in the declaration of the plaintiffs, was the property of the plaintiffs, and that the defendants were guilty of the trespass. It was, therefore consi-

dered by the court, that the plaintiffs have a writ to obtain possession of the said premises, and that they recover of the defendants their damages, as aforesaid assessed, together with their costs, in that behalf expended.

. From this judgment there was a writ of error to this court.

The bill of exceptions stated, that on the trial of the case, the plaintiffs introduced the patent of the United States, made to John Falconer, assignee of Andrew Dexter, and a deed from said Falconer for the premises described in the plaintiffs' declaration to Archibald Campbell, deceased, and proofs that the plaintiffs were the heirs of said Archibald Campbell. The defendants then introduced the records of the County and Orphans' courts of Montgomery county, shewing by said records, that on the thirtieth day of January, eighteen hundred and twenty-seven, one John Harper was appointed administrator upon the estate of said Archibald Campbell deceased, by said court:— That on the eleventh day of April, eighteen hundred and twenty-seven, one of the heirs, David Campbell, petitioned for his distributive share of the estate of Archibald Campbell, deceased: That five commissioners were appointed to divide the estate of said Archibald Campbell, their return shewing division could not be made by them of said estate. They also introduced and read to the jury the following portion of the records, to wit:

' " This day came John Harper, administrator of the estate of Archibald Campbell, deceased, and filed a return of the commissioners heretofore appointed to make distribution of the said estate of the said Archibald Campbell, deceased, among the legatees, and legal representatives—from which it appears that a division can not be effected, without manifest injury to said legatees. It is, therefore, ordered by the court,

that three weeks' publication be given, in the 'Alabama Journal,' for all persons interested in said estate, to appear at a regular Orphans' court, to be holden on the third Monday in May next, and shew cause, if any they can, why the land belonging to said estate should not be sold.

"It appearing to the satisfaction of the court, that three weeks' publication has been given in the 'Alabama Journal,' for all persons interested in the estate of Archibald Campbell, deceased, to appear and shew cause why the lands belonging to the estate should not be sold ; and there being no objection to the same, —it was therefore ordered by the said court, that John Harper, administrator of said estate, proceed to sell all the lands or lots belonging to the estate of the said Archibald Campbell, deceased, on a credit of twelve months, to the highest bidder, after having given notice, by setting up advertisements, in three public places, in said county, and publishing said advertisement in the 'Alabama Journal,' for three weeks, successively, before such day of sale.   It is further ordered, that the said John Harper, administrator as aforesaid, enter into bond and sufficient security, that he will observe the rules and directions of law, for the sale of real estate, by administrators, and that he will well and truly account for the proceeds of said sale. It is further ordered by the court, that the said John Harper, administrator, as aforesaid, make return of the proceeds of said sale, within three months."

They also read to the jury the record of the said John Harper's having sold the premises described in plaintiffs' declaration, at public sale : that one Henry Goldthwaite became the purchaser at the sale of said premises,—the time of said sale being the sixth day of August, eighteen hundred and twenty-seven.   The record, approving of said sales, receiving the return, and ordering it to be recorded, was then read to the

jury. The defendants then introduced the deed, made by said John Harper, as administrator of said Archibald Campbell, deceased, to said Henry Goldthwaite, for said premises ; and also a deed from said Henry Goldthwaite to said defendants, for the premises described in the declaration. No evidence was offered, to prove, the said Harper gave bond to sell according to law. The record was then read, shewing that John Harper, on the thirty-first day of October, eighteen hundred and twenty-five, was appointed guardian of all the minor plaintiffs, heirs of said Archibald Campbell; and proof was made, that the estate of Archibald Campbell, was perfectly solvent, and that the petitioner, David Campbell, was of age, at the time he petitioned for distribution of said estate.

Under this state of facts, the court charged the jury, that if they believed said Harper sold said premises, without giving bond to sell according to law, then the proceedings had by the administrator, were not only voidable, but absolutely void. That all the facts, upon which the exercise of the jurisdiction of the County Court could arise, must appear on the record of said court, and that in their absence the jury would not presume their existence. That if the facts did not appear on the record, the proceedings were void, and conferred no title ; and that unless the facts appeared, the proceedings of the county County court could be impeached collaterally in the present action. The defendants requested the court to charge the jury that if they believed the County court had jurisdiction of the subject matter of the sale of said premises, then a defect in the notice and publication of the time of said sale, rendered the proceedings only voidable, and not impeachable in said action, but binding until reversed. This charge the court declined giving, and charged, that all the requirements of the statute in such cases made, must appear of record, and in their absence the proceedings were absolutely

void. The court also charged the jury, unless the sale of said premises was conducted by said John Harper, administrator, &c., agreeably to the provisions of the act of eighteen hundred and twenty-two, governing sales of intestate's estates, that the title of the heirs of said Archibald Campbell, was not divested, and that the act of eighteen hundred and twenty-two repealed all other acts on the subject, so far as they were in conflict with others, of a previous date, regulating sales of real estate of intestates, &c. To which things defendants respectively excepted, &c.

And at the present term, the defendants assigned for error the matters and charges contained in the bill of exceptions and record, the charge given, and the refusal to charge as requested.

*R. D. Thorington*, for the plaintiffs in error.
*Goldthwaite and Campbell*, contra.
Argued twice, with great ability and research.

COLLIER, C. J.—Considering the case, in the point of view in which it was presented to the court at the argument, we proceed to inquire :—

First.—Does the statute of eighteen hundred and twenty-two, relating to the sale of the real estate of deceased persons, repeal previous enactments on the same subject, and to what extent ?

Second.—Had the Ophans court jurisdiction of the subject matter of the proceeding on which it acted ?

Third.—If it had jurisdiction, were its proceedings *void*, or only *voidable*—and if the latter, could they be collaterally impeached ?

1. In order to a solution of the first question, it is necessary to review the several statutes upon the subject to which it relates. By the twenty-eighth section of the act of eighteen hundred and three, " concerning wills, and the duty of executors, administrators and guardians," it is enacted, " That when any executor

or administrator shall discover or believe that the personal estate of his testator or intestate, is insufficient to pay the debts of the deceased, then it shall be the duty of such executor or administrator, as soon as may be, to make and exhibit on oath, a just and true account of the said personal estate and debts, as far as he can discover the same, to the Orphans' court," &c. Upon the exhibition of such account, it is directed, that a citation shall issue, requiring all persons, interested in the lands, tenements and hereditaments, of the deceased, to appear, at a time not less than forty days thereafter, and shew cause why so much of the lands, &c. as will be sufficient to pay the debts of the deceased, should not be sold. This citation is directed to be set up in three of the most public places of the county in which the lands, &c. are situate, for the space of thirty days, and be published for the same period in a public newspaper of the State.

By the second section of the act "concerning judicial proceedings," passed in eighteen hundred and eighteen, it is enacted, "That whenever it shall be made to appear to the satisfaction of any County court, that the estate of any deceased person, or those who are entitled to inherit the same, will be less injured by a sale of the land or a part thereof, for the payment of debts, than by a sale of slaves, such court may, on the petition of any party interested, cause a citation to issue to all other interested persons, if in the county, or when that is not the case by publication of notice in some newspaper, requiring such interested party or parties, to appear at the next county court, and shew cause, if any they can, why sale of the land belonging to the estate so situated should not be ordered; and on the return of such citation made known, or proof of the publication of the notice hereby required, at the next term of said court, if no cause be shewn, which the court deem sufficient, such court may order sale of such land, or part thereof, as may

be necessary to satisfy debts, without a sale of negroes," &c

The first section of the act of eighteen hundred and twenty, entitled "An act supplementary to the laws now in force, concerning wills, intestates and guardians," enacts, that whenever any person dies intestate, leaving an estate unincumbered by debts, so as to render unnecessary a sale of any part of it, the chief justice or presiding magistrate of the County court, shall, within three months after the personal representative, reports the same to be solvent, appoint five commissioners, with authority to them or a majority of them, to make division or distribution of the estate, &c. "*Provided always*, that when such division or distribution can not be equitably effected, without manifest injury to the legatees or other legal representatives, then, and in that case, such estate shall be exposed to public sale as heretofore."

The act of eighteen hundred and twenty-two, entitled "An act to authorise administrators to sell land, belonging to the estate of their intestate, to which a complete title has not been obtained," makes it lawful for an administrator, or an executor who has no power by the will to sell real estate, to pay debts, or to make a more equitable division among the heirs, devisees, &c. to file a petition, in the county court of the county in which letters of administration or letters testamentary have been granted, setting forth that the personal estate of his intestate or testator, is not sufficient to pay the debts with which it is chargeable, or that the real estate can not be fairly, equitably and beneficially divided among the heirs or divisees of the intestate or testator, without a sale thereof, setting out, and particularly describing, in such petition, the estate proposed to be sold, and the names of the heirs or devisees of such intestate or testator, and particularly stating which are of age, and which are *infants* or *femes covert*. The court is then directed to issue citations to

the heirs, &c. of full age, and to the husbands of such as are *femes covert*, and to appoint guardians to such as are infants. An issue is then to be made up between the petitioners and the guardians, &c., by the latter interposing a formal denial of the allegations of the petition. Proof is to be taken by deposition, and if the court shall determine in favor of a sale, commissioners are to be appointed to conduct it.

These were the only acts to be found in our statute book, at the time the order was made for a sale of the lot in dispute, which relate to the sale of the real estate of intestates. And it may be remarked, that neither of these enactments expressly repeal the other—so that we have only to inquire, whether they so conflict in their terms, that they can not subsist together. To apply this test, we must first settle the interpretation of the act of eighteen hundred and twenty-two : to do this we need not look beyond its terms for aids to lead the judgment, for it is so explicit in its provisions, as to speak conclusively its own meaning. It authorises an executor or administrator to file a petition in the County court of the county whence they derived their authority to act, asking an order for the sale of the real estate of their testator or intestate,—*first*, where the personal estate is insufficient to pay debts ; *second*, where the real estate can not be fairly, equitably and beneficially divided among the heirs or devisees thereof.

The act of eighteen hundred and twenty-two, embraces the entire ground covered by the act of eighteen hundred and three, and is still more extensive in its objects. It invests the personal representative with the right to petition the County court for an order to sell the real estate of his testator, or intestate, upon the personal estate being insufficient to pay the debts with which it was chargeable. It varies materially the mode of procedure in order to obtain the decre for a sale, as well as the mode of its execution ; and,

the two acts being incompatible with each other, the earlier must be taken to have been abrogated by the later.

The statute of eighteen hundred and eighteen, gives the right to the County court, on the petition of any party interested, to order the lands belonging to the estate of a deceased person, to be sold, whenever the estate or those entitled to inherit it, would be less injured thereby, than by a sale of the slaves. There can be no pretence for saying the act of eighteen hundred and eighteen is in conflict with that of eighteen hundred and twenty-two. They each contemplate objects entirely different, and may operate together.

The *proviso* of the act of eighteen hundred and twenty, authorises a sale of the land, when it can not be equitably divided without manifest injury to the legatees or heirs; and the impracticability of an equitable division, is a fact to be ascertained after commissioners shall have been appointed to effect it. This statute confers an authority upon the County court, which the act of eighteen hundred and twenty-two affirms, but to be exerted under different circumstances. In order to a proceeding under the former, the agency of an executor or administrator is unnecessary. The act does not point out any particular proof by which the court is to become informed, that an equitable division can not be made. The court then, may adopt the report of the commissioners, as sufficient, or it may institute an inquiry, and require further evidence to convince the judgment.

Under the act of eighteen hundred and twenty-two, the personal representative is the principal actor : he commences the proceeding by filing his petition in the County court,—parties being made and an issue made up, he goes on to make good its allegations by proof. It does not necessarily belong to the office of an administrator to see that the real estate of his in-

testate is divided between his heirs, or to obtain its sale, that the proceeds may be equitably distributed. The administrator may undertake this office, if he think proper, but if he omit it, he is not chargeable for an omission of legal duty. The one statute then, imposes upon the court, an obligation to act *mero motu*; while the other only authorises its action upon the request of the personal representative. In this view they are entirely reconcileable; and each can perform its appropriate functions, without interference with the other.

The law never favors the repeal of a statute by implication, unless the repugnance be quite apparent; and such repeal, carrying with it a reflection on the wisdom of former legislatures, it has ever been confined to the repealing as little as possible, of precedent statutes.* And though two statutes be seemingly repugnant, yet, if there be no clause of *non abstante*, in the latter, they shall, if possible, have such construction, that the latter may not be a repeal of the former, by implication.—*Rex vs Downs.*†

In *McCartee vs Orphans' Society,*‡ *Woodworth*, Justice, observes, that it is a well settled rule, that where there is a discrepancy between two statutes, such exposition should be made, as that both may stand together, if practicable.§

We cite these cases, not for the purpose of shewing the correctness of our conclusions, for we do not admit any want of harmony between the acts of eighteen hundred and eighteen, eighteen hundred and twenty, and eighteen hundred and twenty-two; but we cite them rather, to prove the strong disposition

---

*11 Rep. 63, Dyer R. 347.
†3 Term Rep. 569.
‡6 Cowen R. 437.
§1 Gall R. 150; 2 Serg. & R. 185; 4 Gill & Johns. R. 1.

of the courts, to reconcile statutes seemingly contra-dictory, instead of favoring an implied repeal.

2. Having determined what statutes were in force when the order of sale was made, we are next brought to consider what facts are necessary to give jurisdiction to the Orphans' court, under the act of eighteen hundred and twenty; for it is clear that the proceeding, in the case before us, was intended to conform to that act.

It may be assumed as undeniable, that legislation is ·the only source whence the Orphans' court derives its entire jurisdiction over the subject matter, and if no warrant can there be found for its acts, they must be taken to be *coram non judice.* Before we enter upon the examination of this head, let it be premised, for the sake of perspicuity, that we employ the terms *County* and *Orphans'* court, as designating the same tribunal. Following the designation of the legisla-ture, either appellation is proper; but when spoken of, with reference to its supervision over the estates of deceased persons, the latter is peculiarly so.

We understand that the proceeding of the Orphans' court is *in rem* against the estate of the intestate, and not *in personam.* · The order by that court, for the sale of real estate, so far as the question of jurisdiction is concerned, may well be compared to the condemnation of goods by a court of exchequer, where jurisdiction attaches upon a seizure,—it merely professes to divest the title of the ancestor, without affecting the persons or other property of the heirs. *McPherson vs Cunliff, et al.*\* So, an order, at the instance of an administrator, for leave to sell the crop of the intestate, or to sell at public sale,` his perishable property, is clearly a proceeding *in rem*, and requires no notice to those whose interests are concern-

---

\*11 Serg. & Rawle, 430.

ed, in order to its validity.    And in proceedings, according to the course of the admiralty, it is a universal rule, that a legal seizure, under lawful authority, gives jurisdiction, and decrees and sentences under such circumstances, divest the title of the whole world, and pass *in rem adjudicatam.** So, in a suit at common law, or in equity, where the court proceeds against the thing, a seizure of property by virtue of process issued from a court of competent authority, vests a complete jurisdiction in the court that issued it, over the thing seized.    But in the case at bar, no process against the lot in controversy was necessary to give jurisdiction to the Orphans' court,—the statute which governs the proceeding, does not require it, and the *thing itself*, was subjected to the action of the court, for the purposes of a sale, so soon as it was sufficiently informed that no division could be *equitably effected, without injury to the heirs.*

In the case of *Bissell vs Briggs,*† the general rule, that the court rendering a judgment, must have jurisdiction, both of the cause and the parties, is explicitly recognised.    In that case the action was commenced by attachment, and the goods of the defendant seized; and the court held, that though he may not have had actual or constructive notice of the pendency of the action, yet it was competent to proceed to judgment, and sell the property attached, in order to its satisfaction.    But if the goods should prove insufficient, to the discharge of the judgment, the creditor could not sue an action on it out of the State, because the defendant was not *personally* amenable to the jurisdiction of the court rendering it.    This case shews that a court may acquire jurisdiction of a cause, where the proceeding is *in rem*, without reaching, by its process,

---

*4 Cranch. 278; 1 Paine's R. 62-6.
† 9 Mass. R. 462.

the person of the defendant, and that *quoad the thing itself*, the judgment is as conclusive, as if the defendant was brought in by notice. In the present case, the Orphans' court acquired a *potential jurisdiction* over the subject matter, by the death of the ancestor, and that jurisdiction, if it did not attach earlier, *was certainly put in actual exercise*, whenever that court assumed to act upon the report of the commissioners, which disclosed the fact, *that a division could not be equitably made, without injury to the heirs.*

In the case of *Thompson vs Tolmie*,* the validity of the proceedings of an Orphans' court, was collaterally drawn in question. The proceedings impugned, originated in the District of Columbia, and were founded on a law of Maryland, which declares, that in case the parties entitled to the intestate's estate, can not agree upon a division; or in case any person entitled to any part, be a minor, application may be made to the court of the county where the estate lies, and the court shall appoint and issue a commission to five discreet men, who are required to adjudge and determine whether the estate will admit of being divided, without injury and loss to all the parties entitled; and to ascertain the value of the estate. And if the estate can be divided, without injury and loss to the parties, the commissioners are required to make partition of the same. And if they shall determine that the estate can not be divided without loss, they shall make return to the County court, and of the reasons upon which their judgment is formed; and also the real value of the estate. And if the judgment of the commissioners shall be confirmed by the County court, then the eldest son, child or person entitled, if of age, shall have the election to take the whole of the estate and pay to the others, their just proportion of the value, in mo-

*2 Peters R. 165.

ney : and, on the refusal of the eldest child, the same
election is given, in succession, to the other children,
or persons entitled, who are of age : and if all refuse,
the estate is to be sold under the direction of the com-
missioners, and the purchase money divided among
the several persons entitled, according to their re-
spective titles to the estate.   But if all the par-
ties entitled shall be minors at the death of the intes-
tate, the estate shall not be sold, until the eldest ar-
rives to age, and the profits of the estate shall be
equally divided, in the mean time.   Under this law, it
was held, that the jurisdiction of the court over the
subject matter of the proceedings, did not depend on
the fact, that one of the heirs was of age, but attaches
when the ancestor dies intestate, and any of the per-
sons entitled to his estate is a minor : that the fact
of the majority of one of the persons entitled, could
only become material, in case the land was not suscep-
tible of a division, without injury or loss to the parties.
If it could be divided without injury, the commission-
ers were required to divide it, although all the heirs
were minors.   The materiality of the inquiry, whe-
ther any one of the heirs was of age, was altogether
contingent, and might never arise.   And at all events,
must depend upon the report of the commissioners,
whether or not the property might be divided without
injury.   This must necessarily, therefore, be an inqui-
ry arising in the course of the proceedings, and after
the jurisdiction of the court attached.*

The court in *Thompson vs Tolmie*, in determining
what facts give jurisdiction under the statute of Ma-
ryland, go quite beyond what the present case re-
quires us to decide, and consequently very fully main-
tains the jurisdiction of the Orphans' court of Mont-
gomery.

---

* To S. P.—see 11 Sergt. & Rawle's R. 430, 431.

Though the act of eighteen hundred and twenty, makes it the duty of the judge of the Orphans' court, to appoint commissioners, with a view to a division and distribution of the intestate's estate, within three months after the administrator shall have represented it solvent, yet there is no express inhibition of the court to act, without such representation from the administrator. And if the court appoint commissioners to divide the estate, we will not say, that the administrator may not arrest its action,—he certainly may, if the estate be insolvent, by so representing it, conceding, *ex gratia, argumenti*, that this initiatory step of the court, in order to its regularity, must be preceded by a report of solvency, it lies with the administrator to object the want of it in abatement of the proceedings, and does not concern the interests of any one else.— In the present case, the record discovers that the administrator had notice of the appointment of the commissioners, for he presented to the court, their report, shewing the impracticability of making an equitable division of the real estate of his intestate—and acts himself, as commissioner, in executing the order of sale. Having done thus much, he impliedly admitted the sale of the lands to be unnecessary, for the payment of debts, and could not, thereafter, be heard to object, in any form, to the regularity of the proceeding of the Orphans' court. The jurisdiction, then, being clearly maintainable, under the act of eighteen hundred and twenty, and as that is all we propose to shew, the strict conformity of the proceedings to its provisions, so as to relieve them from any valid objection on appeal or writ of error, need not be considered.

3. The jurisdiction of the Orphans' court being shown, we are next to inquire, whether its proceedings can be collaterally impeached. In regard to proceedings in the ordinary course of law, it has been invariably holden, that the judgment of a court, having ju-

risdiction of the parties, and the subject matter, is conclusive upon parties and privies; and this, though the record may abound with irregularities, which would authorize its reversal by a revising court.—*Newell vs Newton;*[*] Hale vs Williams;*[†] Mills vs Duryee[‡] Hampton vs McConnell;[§] Young vs Gregory;[||] Messier vs Amery;[¶] Hopkins vs Lee;[**] Barr vs Gratz;[††] Hughes vs Blake;[‡‡] Wrightvs DeKline;[§§] Homer vs Fish et al.[||||] Livermore vs Herschel et al.;[¶¶] Saxton vs Chamberlain;[***] Smith vs Lewis;[†††] Smith vs Sherwood;[‡‡‡] Ryer vs Atwater;[§§§] Bigelow vs Stearns;[||||||] McDowell vs Van Denson;[¶¶¶] Mather vs Hood;[a] Borden vs Fitch;[b] Thatcher vs Gammon;[c] Smith vs Whiting;[d] Jacobs vs Hall;[e] Green vs Sarmiento;[f] State vs Wakely;[g] Hess vs Heeble;[h] Platner vs Best;[i] Young vs Black.[j]*

It may then be assumed, that "the whole current of authorities, recognise the principle, that where a cause has been instituted in a proper *forum*, where all matters of defence were open to the party sued, the judgment is conclusive, until reversed on error," upon the maxim *de fide et officio judicis non reciptur quæstio.* And indeed a different course of decision would have gone to place in uncertainty the rights of *meum* and *tuum*, and overturned the land-marks of property, the settlement of which, was a cardinal object in the formation of the social compact. The sentences of courts, if liable to be incidentally revised, and set aside would

[*]10 Pick. Rep. 470.
[†]6 " " 232.
[‡]7 Cranch, 483.
[§] 3 Wheaton Rep. 134.
[||] Hall's Rep. 446.
[¶] 1 Yeate's Rep. 533; 2 Dall. R. 54.
[**] 6 Wheaton's Rep. 109.
[††]4 " · " 213.
[‡‡] 1 Mason Rep. 515.
[§§] 1 Peters's C. C. Rep. 199.
[||||] 1 Pick. R. 435.
[¶¶]6 " " '33.
[***]6 " " 223.
[†††] 3 Johns. R. 157; 1 Johns. C. R. 322.

[‡‡‡]4 Conn. Rep. 276.
[§§§]4 Day's Rep. 432.
[||||||] 19 Johns. Rep. 39.
[¶¶¶]12 " " 356.
[a]8 " " 44.
[b]5 " " 121.
[c]12 Mass. Rep. 268.
[d]11 " " 445.
[e]12 " " 25.
[f]1 Peters's Rep. 74.
[g]2 Nott & M'Cord, 410.
[h]6 Sergt. & Rawle. 57.
[i]11 Johns. Rep. 530.
[j]7 Cranch. 567.

so impair their efficacy, as greatly to detract from the dignity of the tribunals of justice. *Interest reipublicæ ut sit finis litium*, is a salutary maxim,—while it would establish upon a firm basis, the interests which society proposes to protect, it imparts respectability to the the institutions of the country.

In *Rose vs Himely*,\* it is said, if a judgment be merely irregular, the courts of the country pronouncing the sentence, were the exclusive judges of that irregularity, and their decision binds the world: if *coram non judice*, the sentence is as if it never was pronouced.— So, in *Kempe's lessee vs Kennedy*,† in speaking of a court whose judgment is attempted to be impeached, the Supreme Court of the United States say, the judgment it gave was erroneous, but it is a judgment, and until reversed, can not be disregarded.‡

A decree in Chancery, directing the sale of real estate, when collaterally drawn in question, can not be impeached; nor is a purchaser bound to look beyond it, if the facts necessary to give jurisdiction appear on the face of the proceedings.

In *Windham vs Windham*,§ an indirect attack was made on a sale under the decree of a court of equity; whereupon the Lord Keeper remarked, "*You blow up with gun-powder, the whole jurisdiction, if such a purchasr is not protected.*—See also *Kitely vs Lamb*.‖

The orders of an Orphans' court, though not obtained by the prosecution of a suit in the ordinary form of procedure, are assimilated to a judgment, and conclude all previous irregularities.¶ And in *Selin vs Snyder*,\*\* it was decided that the Orphans' court, acting within its jurisdiction, had power to grant the order for a sale of the real estate of the intestate—that

---

\*4 Cranch, 278.      §3 Ch. Rep. 12.
†5 " 186.      ‖2 " " 405.
‡To S, P. 11 Mass. R. 229.      ¶11 Sergt. & Rawle, 436.
\*\*7 Serg. & Rawle, 166.

the purchaser is bound to look to the jurisdiction, and if this is shewn by the record, it is not allowable to dispute its verity, and thereby defeat the purchase.

In *McPherson vs Cunliff, et al.*[*] in which the validity of an order of sale came collaterally in question, the doctrine is advanced, " that where there is a direct sentence on the very point, such is to be received as conclusive evidence, not to be impeached from within, but like all other acts of the highest judicial authority, is impeachable from without :. and it is not permitted to shew that the court was mistaken in the original action ; it may be shewn that they were misled by some collusive act between the parties : and this was decided by the opinion of all the Judges of England, in the Duchess of Kingston's trial, in the House of Lords."[†]   Here is a direct assertion of the conclusiveness of judgments upon all matters which were or are supposed by the record to have been before the court: these having passed in *rem adjudicatam*, are not subject to revision by any indirect proceeding, and can only be reversed or set aside by an appellate court.   But it is competent to impeach a judgment for fraud, when collaterally drawn in question ; because proof shewing collusion, does not contradict the record, but is in itself the introduction of something extrinsic.

So, in the case of *The Town of Canaan vs The Greenwood Turnpike Company,*[‡] Trumbull, Judge, in delivering the opinion of the court, said—" A judgment, decree, sentence, or order passed by a court of competent jurisdiction, which transfers, creates, or changes a title, or any interest in estate, real or personal, or which settles and determines a contested right, or which fixes a duty on one of the parties litigant, is

---

[*]11 Sergeant & Rawle's Reports, 437.      [†]9 State Trials, 268.
[‡]1 Conn. Rep. 1.

not only final as to the parties themselves, and all claiming by or under them, but furnishes conclusive evidence to all mankind, that the right, interest or duty belongs to the party to whom the court adjudged it."

In *Gervis and Wife vs Brown, et al,** the decree of a court of ordinary, revoking the probate of a will, was held to be the judicial act of a court possessing jurisdiction over the subject matter. And the exercise of this right was held so inviolable, that evidence would not be permitted to contradict the matters adjudged, but it could only be set aside upon appeal.— To the same effect is *Scott vs Hancock.†*

In *Mooers vs White,‡* chancellor Kent approves the doctrine of the conclusiveness of an order of sale, and places his opinion upon the competency of the jurisdiction of the court making it. So, in *The heirs of Ludlow vs Johnston,§* it was determined, that where the court making an order of sale had jurisdiction, a collateral inquiry will not be allowed to shew whether its jurisdiction was improperly exercised. Though the order be unadvisedly or erroneously made, the purchaser has acquired rights he cannot be divested of, by any indirect proceeding; and so far as the interests of purchasers are concerned, it is considered equally available as a judgment. And to the same effect is *Sumner vs Parker,∥* where, examining the conclusiveness of a decree of a judge of probate, the court remark, that if within the sphere of his authority, the judge mistakes the application of the law, the decree is voidable, and may be reversed by an appellate tribunal; and is in force, until its reversal. But if a decree be made upon a subject, without the jurisdiction of the judge, it needs no reversal, it is void.

---

*1 Nott & M'Cord, 329.        †6 Johns. Ch. R. 384.
† 13 Mass. R. 162.        §3 Ohio Rep. 560.
∥7 Mass. Rep. 79.

And in *Wales vs Willard*,[*] the distinction between void and voidable judgments, is clearly recognised.— So, *Perkins vs Fairfield*,[†] is a direct authority to shew that a title acquired, by purchase made on sale, under an order for the sale of the real estate of an intestate, is valid, if the court making the order had jurisdiction, though its proceedings are erroneous.—To S. P. see *Elliott et al. vs Peirsol et al.*[‡]

In *Thompson vs Tolmie*,[§] the decision in *McPherson vs Cunliff*, is cited with approbation, and the court re-affirm the doctrine, that where there is a fair sale, and the decree executed by a conveyance from the administrator, the purchaser will not be bound to look beyond the decree, if the facts necessary to give the court jurisdiction, appear on the face of the proceedings. After a lapse of years, presumptions must be made in favor of what does not appear. And further, "the decree of an Orphans' court, in a case within its jurisdiction, is reversable only on appeal, and not collaterally, in another suit."

The same court, in the case of *Voorhees vs The United States Bank*,[‖] again declare, that the errors of a court do not impair the validity of its judgments; and that any objection to its full effect, when impugned by an indirect proceeding, must go to the authority under which it was rendered. If a court usurps jurisdiction, its act is void; but if, in the exercise of a lawful power, it errs in judgment, its acts are merely voidable, and remain in full force, until set aside by a revising tribunal. The Orphans' court, in the exercise of its authority over the real estate of an intestate, has been assimilated to a court of equity. Considering the manner of its procedure, and the extent

---

[*]2 Mass. Rep. 120.  [‡]1 Peters, 340.
[†]11 "   " 227.    [§]2 "   168.
          [‖]10 Peters, 474.

of its discretion over the subject, the comparison is not perhaps entirely inapt.

No injury can result from the conclusion, that the jurisdiction being shewn, it is not competent to invalidate the order of sale, when introduced in evidence, as a link in the chain of title,—for an appeal, or writ of error is given by statute, "from any judgment or order final, within vacation or term time" of the County court, to the Circuit or Supreme court. Let, then, the review we have taken of the authorities, suffice to shew, that judicial sentences, whether designated as judgments, in the courts of law, decrees in Chancery, or orders of an Orphans' court, if not founded in a usurpation of power, are conclusive, until reversed by a higher tribunal. We proceed now, to fortify this conclusion.

In the case of *the Lessee of Goforth vs Longworth,*\* it is held to be well settled, that courts give a liberal construction to statutes authorising sales of real estate by executors and administrators. Public policy requires that all reasonable presumptions should be made in support of such sales, especially respecting matters *in pais.* The number of titles thus derived, and the too frequent inaccuracy of clerks and others concerned in effecting these sales, renders this necessary. If a different rule prevailed, purchasers would be timid, and estates consequently be sold at a diminished value, to the prejudice of heirs and creditors.

In favor of innocent purchasers, the cases cited from 2 and 10 Peters's Reports, and 11 Sergeant & Rawle's Reports, very fully maintain the same doctrine : and it is certainly compatible with the purest principles of justice. Who would consent to become a purchaser at such a sale, if he was to be made responsible for every irregularity in the proceedings of the court that ordered it?

_____

\* 4 Ohio Rep. 129.

Again : the rules of law are in general so framed, as to favor the fair purchaser. If a judgment is reversed, for error in the record, the defendant can only obtain restitution of the money, while the purchaser shall hold the property sold for its satisfaction.*

So it has often been made a question, whether a *bona fide* purchaser of land, under an execution issued upon a judgment which had been paid, but no satisfaction entered of record, would not be protected in his purchase.† A sale under an irregular execution, which is merely voidable, passes title to the purchaser.—*Blaine vs the " Charles Carter."*‡

It remains to examine more particularly the legal correctness of the charge given, as well as the refusal of that asked, in the Circuit court.

1. The instruction given asserts in the first place, that if the administrator sold the real estate of his intestate, without giving bond to sell according to law, his proceedings were absolutely void. The thirtieth section of the act of eighteen hundred and three requires, that the personal representative before he obtains the order of sale from the clerk of the Orphans' court, shall enter into bond with sufficient sureties &c. This is the only statute which requires such a bond, and was, of course, in the contemplation of the judge, when he gave the charge. The omission to execute this bond can not be held to avoid the sale. It is made the duty of the clerk to require it, before he furnishes the administrator with a copy of the order ; but if regardless of this requisition of the act, he issues a copy, an innocent purchaser can not be prejudiced. The purchaser is not to supervise the clerk, in the performance of his duties, but may well infer the execution of the bond, from the fact that he

---

*10 Peter's Reports, 475 ; 6 Har. & Johns. R. 204 ; 1 Ccw. R. 642.
†1 Cowen's Reports, 622.
‡4 Cranch's Reports, 328.

has furnished the administrator with the warrant for a sale.

2. The second head of the charge is not very intelligible. If it be understood as asserting, that every thing necessary to legitimate the action of the Orphans' court, should appear of record, or else the proceedings of that court were *void,* our views upon another branch of the case, negative its correctness. But if the court intended to say, that the facts necessary to give jurisdiction, should appear of record, or else the proceedings were *coram non judice,* and of consequence, void, it was clearly right.—*Kempe vs Kennedy;* Stanley vs Bank of America;† McCormick vs Sullivant;‡ Life vs Mitchell;§ Williams vs Blunt;‖ Shivers vs Wilson et al.¶ Wickes vs Caulk;** Thatcher vs Powell;†† It is needless to undertake an interpretation of the meaning of the judge, as the judgment, without reference to this part of the charge, can not be sustained.

3. The bill of exceptions states that the defendant below moved the court to instruct the jury, that if they believed that the County court had jurisdiction of the subject matter, a defect in the notice and publication of the time of sale rendered the proceedings only voidable, and binding until reversed. This instruction was refused, and the court charged the jury, that all the requirements of the statute in such case, must appear of record, and in their absence, the proceedings were absolutely void. There is certainly no error in the refusal to give the instruction asked,—for there was no evidence as to the notice of the time of sale; and the opinion which the court was required to express, could have had no influence upon the verdict of the jury, but was abstract and irrelevant.

---

*1 Peter's C. C. R. 30–36.    ‖2 Mass. R. 213.
†4 Dall. R. 11.    ¶5 Har. & Johns. R. 130.
‡10 Wheat. R. 192.    **5 "    "    36.
§2 Yerger's Rep. 400.    ††6 Wheat. R. 119.

Again : The motion for an instruction supposes that it is immaterial how the sale was conducted, if the court decreeing it, had jurisdiction of the subject matter of the proceeding. In this view, it is believed that it should have been denied. If the authority of the court is shewn of record, any subsequent irregularity in its action, would not make the decree *void*, but, at most, merely *voidable*. Yet, if the decree (as it should do) prescribes certain formalities, preparatory to the sale, they must be observed, or the authority to sell can not be well executed. Where particular forms are pointed out, for the execution of a power, however immaterial they may appear, in themselves, these forms are considered as conditions, the observance of which can not be dispensed with. — *Nixon vs Hyserott ;*[*] *Hunt vs Chamberlain's ex'ors ;*[†] *Denning vs Smith;*[‡] *Hudson vs Hudson;*[§] *Combe vs Brazier.*[||] An authority to an administrator to sell the estate of his intestate, is a personal trust, and must be strictly pursued.—*Bryan et al. vs Hinman;*[¶] *Lockwood vs Sturdevant;*[**] *Berger et al. vs Duff.*[††] So also is an authority given to an executor, by will, to sell.—*Pendleton and wife vs Fay et al.*[‡‡]

It is necessary, then, that the administrator should do every thing required by the order to be done, previous to the sale, or the sale passes no title. But the purchaser can not be prejudiced by the omission of an administrator to perform any act, after the sale.— The interest acquired by his purchase can not be lost by a failure to make a return to the Orphans' court, of the proceedings under the order.[§§]

4. The last instruction complained of, is substanti-

---

[*]5 Johns. R. 58.
[†]3 Hall's R. 336.
[‡]3 Johns. C. Rep. 344.
[§]6 Munf. R. 352.
[||]2 Dess. R. 431 ; Sug. on Pow. 364.
[¶]5 Day's R. 211.

[**]6 Conn. R. 373.
[††]4 Johns. C. Rep. 368.
[‡‡]2 Paige's C. R. 202.
[§§]5 Day's Reports, 211 ;
  1 Dall Reports, 486 ;
  5 Wheeler's Ab. 258.

ally this, that unless the sale of the lot in controversy, was conducted agreeably to the act of eighteen hundred and twenty-two, governing the sale of intestates' estates, the title of the heirs was not divested; and that that act repealed all others of a previous date, on the same subject, so far as they were in conflict.—We have already shewn, that the acts of eighteen hundred and eighteen and eighteen hundred and twenty, are in harmony with that of eighteen hundred and twenty-two, so far as they confer jurisdiction upon the Orphan's court. The statute of eighteen hundred and three, so far as it gives authority to that court, to direct the sale of land, is impliedly repealed by that of eighteen hundred and twenty-two, yet the mode of procedure it provides, still continues in force, and is applicable to proceedings under the acts of eighteen hundred and eighteen, and eighteen hundred and twenty,— and the charge maintaining the reverse, can not be sustained.

The form in which some of the instructions were asked and given, seems to us to have been objectionable, by referring questions of law to the jury : yet, as it can subserve no purpose, we deem it unnecessary to particularize them.

We are aware, that in this opinion, we run counter to some of the reasoning and conclusions of this court, in the case of *Wiley & Gayle vs White & Lesley,** which was twice here. The very great respect we entertain for the learning of the Judges who concurred in the opinions, in that case, and the propriety of upholding the doctrine of *stare decisis,* have induced us to give to this case a more careful and elaborate examination. Principles, the opposite of those we have stated, would be productive of the severest and most extensive injury. It is impossible to conjecture the vast

---

*2 Stewart's Reports, 331 ; 3 Stew. & Porter, 355.

amount of property holden under sales, made by order of an Orphans' court; and we all know, that in at least three fourths of the cases, the records are remarkable for their want of technicality and legal precision. Let the rule be established and continued, which requires the record to disclose every material fact, and which makes indispensible to the passing of title, publication of the petition to sell, the return of the sale, the execution of a bond by the administrator, to the Orphans' court, and every thing else which the statute prescribes as preparatory to a decree, and a large majority of the titles acquired through such a channel, would be overturned. In questions of doubt, arguments drawn *ab inconvenienti*, deserve great consideration—yet we need not invoke their aid in this case, for authority is full, to sustain every point we have determined.

It is worthy of remark, that the distinction between void and voidable judgments, seems not to have been considered in the case of *Wiley & Gayle vs White & Lesley;* but it is assumed that the proceedings of the Orphans' court may be collaterally impeached, for an omission to disclose, by its record, an observance of every thing enjoined by statute, upon the ground that it is a court of limited jurisdiction. This reasoning only proves the order to have been voidable, if the authority of the court was shewn, and could hold good, on an appeal or writ of error—but does not shew, that it was void *per se,* so as to subject it to an indirect attack.

The views already expressed, relive us from a more extended review of the case last cited; and without attempting to recapitulate, it remains but to declare, that the judgment must be reversed and the cause remanded.

GOLDTHWAITE, J, not sitting in this cause.