# Bibb *et als. v.* Bishop Cobbs Orphan Home.

### *Bill in Equity to enjoin Action of Ejectment.*

1. *Allegation of necessity for sale; what sufficient on collateral attack.* On collateral attack, a petition for sale of decedent's lands for division, &c., which describes the locality and situation of the lands, and avers that they would be unproductive, unless divided into lots and buildings erected thereon, which the estate has no means of paying for, "*wherefore it is manifest, said lands can not be equitably divided between the heirs of said estate, unless by a sale of the same,*" &c., is sufficient, in its allegations of the necessity for a sale, to give the court jurisdiction to order the sale.

2. *Necessity for sale, ascertainment of; what sufficient on collateral assault.*—An order of sale of lands descended to infants, reciting that "*K.,*" *commissioner heretofore appointed to take testimony in this cause, having reported the same, which by order of the court is approved and ordered to be filed among the papers of said estate; and the court proceeded to examine the testimony, and from said testimony it appears to the court that said lands can not be equitably divided among the heirs-at-law, without a sale thereof, and also that it would be more to the interest of the minors to sell said property and reinvest,*" &c., contains enough to show that the necessity for sale was ascertained by proof of disinterested witnesses, taken by deposition as in chancery cases, when the order of sale is attacked collaterally.

3. *Heir; when will be enjoined from prosecuting ejectment.*—Lands descended to infants were sold under order of the probate court, for division. The sale was confirmed, the purchase-money paid, and a conveyance ordered to the purchaser, but the administrator failed to execute it. The record showed enough to sustain the sale on collateral attack. The administrator made final settlement, accounting for the proceeds of the sale, and the heirs' respective shares thereof were paid to their guardian, who disbursed it for their support. No fraud or unfairness was charged,—*held :* The purchaser

acquires a good equitable title to the land; and a court of equity at his instance, or one claiming under him, will enjoin ejectment by the heirs, after attaining majority, to recover the land.

APPEAL from the Chancery Court of Montgomery.

Heard before Hon. H. AUSTILL.

The appellee, the Bishop Cobbs Orphan Home, a domestic corporation, filed this bill against the heirs-at-law of Mary Terry, deceased, to enjoin the prosecution of an action of ejectment which the latter had brought in the year 1873, against appellee, to recover certain lands which had formerly belonged to said Mary Terry, deceased.

The material facts of the case are as follows: Mary Terry died in the year 1856. Her heirs-at-law were two grandchildren, then under ten years of age. Algernon S. Bibb was appointed and qualified as administrator. On the 6th day of September, 1856, Bibb filed his petition in writing, under oath, which, after stating that deceased died seized and possessed of certain lands, of which the premises in controversy formed a part, &c., proceeds as follows: " That the value of said lands arises mainly from its proximity to the city of Montgomery, and its suitableness for building lots for persons resident in the city of Montgomery; that there is but one residence erected on the land, and that the dwelling and outbuildings are greatly in want of repairs, and that it will require a large expenditure of money, in proportion to their value, to make them rent for a fair remuneration on their cost. Further showing, states that the rent of said premises and all the income of the heirs of said estate from other sources, would not afford the means during their minority to build upon, and so improve the said lands, as to make them yield a fair *per centum* upon the value of said premises. Further shows, that from the facts herein set forth, it is manifest that the said lands can not be equitably divided between the heirs of said estate, unless by a sale of the same."

The petition then states the names and ages of the heirs, and concludes, " wherefore, your petitioner prays the order of this court, directing and commanding him, to proceed and sell the lands, at such time and place, and on such terms as this court may direct; that the proceeds of sale may be distributed between the heirs of said estate," &c.

The court thereupon made an order, which recited the filing of the petition, fixed a day for the hearing, and appointed a guardian *ad litem* for the minors, who was ordered to appear at the appointed time and defend the interest of

his wards. The court further "ordered that a commission issue to S. D. Hubbard and John M. Shields to take testimony in the cause, and that they report the same to the court on or before October 21st, 1856," the day set for the hearing.

The order of sale recites the filing of the petition, &c.; that the guardian *ad litem* appeared and denied in writing all the allegations of the petition, &c., and then proceeds, "and E. M. Kerr, heretofore appointed commissioner to take testimony in said cause, having reported the same, which by order of the court is approved, and ordered to be filed among the papers of the said estate; and the court proceeded to examine said testimony, and from said testimony it appears to the court that said lands can not be equitably divided among the heirs-at-law, without a sale thereof; and also that it would be more to the interest of said minors to sell said property, and reinvest the proceeds of the same in some other property, as bonds, bills of exchange," &c. Then follows a regular order for the sale of the lands, on a credit of twelve months, with directions to the administrator to make a return, &c., within sixty days.

The sale was made, the administrator selling the lands in lots as the order authorized. He reported the sale, and that George W. Lowe was the highest bidder for the lands at the sum of $2065, and that he had fully paid the purchase-money. The court finding that the sale had been fairly conducted, &c., and the terms thereof complied with, by payment of the purchase-money, made an order confirming the sale and directing the administrator to make a conveyance to Lowe. It seems that this was never done.

After this, Lowe conveyed the land here in dispute to Bibb, the administrator, for $600, which was its fair value. Bibb conveyed to one Bailey, who, in 1860, conveyed to the appellee.

Bibb made a final settlement of his administration in the year 1860, in which he charged himself with the amount of the purchase-money paid by Lowe. Decrees were rendered against him in favor of the heirs for their respective shares; and he afterwards becoming their guardian, charged himself on his settlements as such with the amount of said decrees. He settled his guardianship in 1868, and it appeared therein that nearly all the money he had received had been expended in their maintenance.

The chancellor decreed that appellee was entitled to relief, and rendered a decree perpetually enjoining the prosecution

[Bibb v. Bishop Cobbs Orphan Home.]

of the action of ejectment, or other interference with appellee.

This decree is now assigned as error.

R. M. WILLIAMSON, for appellant.—The allegations of the petition did not give jurisdiction. There is no averment that the land can not be "equitably divided," but the writer of the petition draws the inference that "from the facts herein set forth, it is manifest that the said lands can not be equitably divided between the heirs of said estate unless by a sale of the same." Now, the only facts which are thus set forth in the petition, having any bearing upon the susceptibility of said land for equitable division are, that there is a large body of land, and that the main value thereof consists in its suitableness for "building lots;" that the improvements are inconsiderable, and that only two children, under ten years old, are the owners of the same. These facts, instead of justifying the inference drawn from them by the petitioner, show that such land could be very easily divided between the owners.

2. There is no deposition of witnesses in the probate record, and the only mention of any testimony in the record is in the decree of sale, which mentions " E. M. Kerr," commissioner, heretofore appointed to take testimony in said cause, &c. Whether the testimony was taken in interrogatories, or whether the guardian *ad litem* crossed the same, or had an opportunity of doing so, or who the witnesses were, or by what authority " E. M. Kerr " became a commissioner, or what facts the testimony established, or tended to establish, is all left to conjecture—it does not appear from the record. The order further recites that it appeared from the testimony that an equitable division could not be made of the land, and that a sale of the same, and an investment of the proceeds, would be more to the interest of the heirs; but on which of these grounds the order is made is uncertain, or whether made on the supposed existence of both grounds. There is no compliance with section 2225 of the Revised Code, and the order and this sale are void.

SAYRE & GRAVES, *contra.*

MANNING, J.—The irregularities and errors in the proceedings of the Probate Court upon the application of Algernon S. Bibb as administrator of the estate of Mary Terry, deceased, (of whom appellees were heirs-at-law,) for the sale

of the land embracing the parcel now in controversy, were such as would have compelled us to reverse the decrees of that court, if upon proper objections and assignments of error, they were under review upon an appeal therefrom, and nothing more was disclosed by the record, than is now here shown. But that sale was made in 1857, before the late war; and it is attacked collaterally in a suit of appellees, which treats it and the proceedings of the Probate Court relating to it, as wholly void. Whether they are so or not, depends, in the first place, upon the question whether the Probate Court had jurisdiction to decree a sale of the land, and not upon an inquiry into the correctness or error of its acts in exercising that jurisdiction. This has been long settled in this State, by judicial decisions.— *Wyman v. Campbell*, 6 Porter, 219; *Doe ex dem Duvall's Heirs v. McLosky*, 1 Ala. 709; *King v. Kent's Heirs*, 29 Ala. 549, and cases there referred to; *Satcher v. Satcher's Administrator*, 41 Ala. 26; *DeBardelaben v. Stoudenmire*, 48 Ala. 643; *Wright's Heirs v. Ware,* 50 Ala. 549; *Pettus v. McClanahan*, 52 Ala. 55.

It has also further been ruled that when proceedings and a decree of this kind are brought into question collaterally, "public policy requires that all reasonable presumptions should be made in support of such sales," and that "if a different rule prevailed, purchasers would be timid and estates consequently be sold at diminished value, to the prejudice of heirs and creditors."—*Goforth v. Longworth*, 4 Ohio, 129, cited in *Wyman v. Campbell*, 6 Porter, 242, and in other Alabama cases. In the case last named, COLLIER, C. J., said: "It is impossible to conjecture the vast amount of property holden under sales made by order of the Orphans Court, and we all know that in at least three-fourths of the cases, the records are remarkable for their want of technicality and legal precision." Of the application to sell, this court in *King v. Kent's Heirs*, declared: "When the petition is directly assailed, the question is one of pleading, and the intendments are made against the pleader: but a different rule prevails when the proceedings have gone into a decree under which rights of property have attached. Then, every reasonable intendment in the construction of the language of the petition must be in favor of the validity of the paper. . . . We should understand the petition as it is reasonable to infer that the party who made it and the judge who acted upon it, did understand it, and not as they were bound to understand it."—29 Ala. pp. 553, 554. And again in *Wright's Heirs v. Ware*, 50 Ala. pp. 557–8, it was reiterated:

" If the sufficiency of the petition had been put in issue by demurrer, or assailed on error, judgment against it must have been pronounced.   Then, as has been said in this court, all intendments would have been indulged against the pleader.   When the proceedings ripen into a decree and are collaterally assailed, and rights of property have attached, the rule is changed, and every reasonable intendment is made in favor of the validity of the decree.   All questions of pleading which the court had a right to decide, are conclusively adjudicated, and whether correctly or not is not the subject of inquiry. . . .   Reading the petition as it was doubtless read by the Court of Probate, and intended by the petitioner to be read, it must now be considered as averring the conviction of the petitioner—that a sale of the lands was more beneficial than of the slaves: and thus read it fully supports the jurisdiction of the Court of Probate." Id. ibid.   It is quite clear upon the authority of these cases, and the similarity of the averments in the petitions upon which the two latter were founded to those made in the present case, that the allegations of Bibb, the administrator, of the size and situation of the parcel of land of which he prayed a sale, of the fact that it had but one residence or dwelling-house with its appurtenant out-houses thereon,— which needed repairs that the heirs were unable to make, and of their inability to improve the land, concluding with the words, " it is manifest that the said lands can not be equitably divided between the heirs of the said estate unless by a sale of the same," are to be taken as equivalent to a direct averment to that effect, and as bringing into exercise the statutory jurisdiction of the Probate Court to sell this real estate.   The petition was certainly understood by the probate judge as alleging of the land " that the same can not be fairly and equitably divided between the heirs-at-law,"— for, he so describes it in the minute entry showing when it was filed; and that allegation contains the very words of the act.

But, though it be thus shown that the jurisdiction to sell was acquired, yet according to a statute of 1854, (now section 2458 (2225) of the Code of 1867,) " no order for the sale of land belonging to any estate must be made, when there are minors or persons of unsound mind interested in such estate, unless the Probate Court has taken evidence by deposition as in chancery proceedings, showing the necessity of such sale. . . .   Any order of sale and sale made without a compliance with the requisitions of this section, shall be

wholly void." And on behalf of appellants, it is contended that no such depositions are produced or shown to have been taken, and the order of sale and sale were therefore void.

An entry on the minutes of the court of its proceedings on the day when the petition was considered and the order of sale made, after a recital of the appearance of the heirs by their previously appointed guardian, sets forth that "E. M. Kerr, commissioner heretofore appointed to take testimony in said cause, having reported the same," it "is approved and ordered to be filed; . . . and the court proceeded to examine said testimony, and from said testimony it appears to the court that said land can not be equitably divided among the heirs-at-law without a sale thereof," &c.; whereupon the order of sale was made. This brings the case directly within the ruling upon this very point of *Wright's Heirs v. Ware, supra.* And "testing the recitals of this record by the presumptions extended to judicial proceedings when collaterally attacked, we feel justified in declaring that it appears from the record that depositions proving the necessity of sale, were taken as in chancery proceedings." Hence, the argument founded upon this supposed defect falls to the ground.

The propositions discussed are the only ones on which it could be contended that the orders and decrees of the Probate Court are void. So far as they were merely voidable and might have been reversed on appeal for error, they can not be collaterally assailed; and to what extent they might have been so impugned, we need not now inquire.

The record shows that the Probate Court had jurisdiction to make the sale, and was, in fact, the vendor of the land through the agency of the administrator. Under its order, the land was sold, and the sale was reported to and confirmed by it. Also, upon the report of the administrator that the price had been paid by the purchaser, Lowe, to him, its final decree was made in pursuance of the statute, empowering the administrator to convey to Lowe, his heirs and assigns, all the right, title, interest and estate which the deceased Mary Terry had in the land,—judicially determining that the purchaser having paid for the land, was owner thereof, and entitled to such a deed of the same. Lowe, after the sale to him, "conveyed the lands in dispute" to Algernon S. Bibb, the administrator, for $600, and he conveyed to one Bailey, who, in 1860, conveyed to appellee, a corporation now named The Bishop Cobbs Orphan Home.

The record further shows that the administrator, on his

final settlement in 1860, charged himself with the purchase-money (over $2000) of the land sold to Lowe; that to each of the heirs, appellants in this cause, their respective shares were allotted by the decree of distribution then made; that the administrator, who was their father, having in the same year been appointed guardian of each, and executed his bonds as such, with sureties, debited himself and was charged in his settlements as guardian in the Probate Court, with all the moneys awarded to them as their shares of Mrs. Terry's estate, and that a settlement of his guardianships was made in 1868, showing that most of the amount in his hands as guardian, had been expended for the support and maintenance of his wards.   And it is not averred or intimated in the answers of appellants, that there was any fraud or breach of trust or violation of duty, on the part of said administrator or Lowe, in any transaction relating to the sales of the land or of any part thereof.   We must, therefore, hold, it not appearing that a conveyance was made according to the decree of the Probate Court, by the administrator to Lowe, that a good equitable title to the lot in controversy is vested in the appellee, which justified the orders and decree of the chancellor restraining and perpetually enjoining appellants from prosecuting their action to recover said lot from that corporation, or in any way interfering with its right to or possession of the same.   The chancellor might properly have gone further, and required a conveyance to complainant below, of the legal title thereto, remaining in appellants.

Let the decree of the chancellor be affirmed.