## MATHESON'S HEIRS *vs.* HEARIN.

[BILL IN EQUITY, BY PURCHASER OF LAND AT SALE UNDER ORDER OF ORPHANS'
COURT, AGAINST HEIRS-AT-LAW, TO ENJOIN ACTION AT LAW, AND TO OBTAIN
TITLE.]

1. *Settled rule of property binding on courts.*—Where judicial decisions may be
fairly presumed to have become a settled rule of property, they should be
upheld and maintained, not only as to the points necessarily involved and
decided, but also as to the principles declared by subsequent cases to have
been established by them.
2. *Who may petition for sale of decedent's land.*—The administrator of the estate
is "a party interested," within the meaning of the act of 1818, (Clay's
Digest, 195, § 18,) and may, therefore, petition the orphans' court for an
order to sell his intestate's lands.
3. *Jurisdiction of orphans' court to order sale of land.*—Under the act of 1818, the
orphans' court acquired jurisdiction to order a sale of a decedent's real
estate, on its reception of a petition by the administrator, stating that a
sale of the real estate would be less injurious to the estate than a sale of the
slaves, and that a sale of a portion of the estate was necessary to discharge
debts.
4. *Validity of order of sale.*—If the court had acquired jurisdiction of the pro-
ceeding, the order of sale is not void, when collaterally attacked, because
made in vacation; nor because it fails to prescribe the character and place
of the sale, and the notice to be given.
5. *Validity of sale.*—The sale itself is not void, when collaterally attacked,
because it was made on the premises; nor because the administrator failed
to give the statutory notice.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WADE KEYES.

WILLIAM MATHESON died, in 1836, in Clarke county, Ala-
bama; and by his will, which was duly probated, specifically
devised certain lands to his three daughters, Maria, Flora,
and Caledonia.   Letters of administration, *cum test. ann.*,
were granted on his estate, in 1837, to John Darrington and
John Murphy; and on the death of Murphy, in 1842, Dar-
rington became sole administrator.   On the 28th October,
1844, Darrington, as administrator, and the widow of said
Matheson, filed a petition in said orphans' court, praying a
sale of a portion of the lands of the estate, for the payment

of debts. The petition alleged, among other things, "that said administrator has employed the profits arising from the plantation and slaves, to the payment and discharge of the indebtedness of the estate, so far as the same was available"; "that said indebtedness is large, and most of the debts of a pressing and important character"; "that it has become necessary that some portion of said estate should be sold, in order to discharge the debts which are now due and owing"; and "that the estate will be less injured by a sale of the above named portion of the lands, for the payment of its debts, than by a sale of the slaves." The petitioners prayed that citations might issue "to Jacob Pearson, who married Maria Harwell, William Matheson, Flora Matheson, and Caledonia Matheson, children and heirs-at-law of said William Matheson, deceased, minors under the age of twenty-one years," to show cause, &c.

On the filing of this petition, the court appointed the 9th December then next for the hearing, and ordered a citation to the widow and heirs named above. The citation was returned "not found" as to Jacob Pearson, and "executed by leaving a copy at the house, December 5, 1844," as to all the others. On the 9th December, which was in vacation, the court granted an order of sale, the material portion of which is in these words: "Such proceedings being had as the law requires, and no person appearing to dispute or resist the facts set forth in said petition; and this court, being fully satisfied from the enumeration of reasons contained in said petition, and other good and sufficient causes, that it will be more to the advantage of said estate to sell a portion of the real estate, to pay debts due and owing, than to sell slaves, doth order, adjudge, and decree, that said administrator be authorized to sell, on a credit of twelve months, (the purchasers giving notes, with two approved securities,) the following described lands," &c.; "said land being decreed to be sold, in order to raise funds to pay debts due and owing from said estate. It is further ordered that said administrator report the same to this court by the first Monday in February next."

On the 27th October, 1845, it was ordered that the report of the sale "be received, recorded, and filed." In this report the administrator says, "I advertised said lands, in four public

places in said county, forty days previous to the day of sale; and on the 20th day of January, 1845, on the premises, said lands were sold at auction to Thomas Hearin, trustee of Mrs. Eliza Ann Flinn, he being the highest and best bidder for the same"; also, that said Hearin paid a part of the purchase money in cash, and gave "a good and sufficient note" for the residue.

In September, 1854, Hearin, as trustee of Mrs. Flinn, and Mrs. Flinn and her husband, filed their bill in equity, setting forth the facts above recited, and further alleging, that the purchase money paid by Hearin was applied by Darrington to the payment of the debts of the estate, but no conveyance of the lands was ever executed; that complainants took possession under said purchase, cultivated a portion of the land, sold the tract to one Deas, and placed him in possession; and that the heirs-at-law of said Matheson have instituted an action against said Deas to recover said land, on the ground that said sale is void. The bill seeks an injunction against the prosecution of the suit at law, and a conveyance of the legal title.

The defendants answered the bill, insisting that the proceedings of the orphans' court were void.

The chancellor decreed in favor of the complainants, and his decree is now assigned as error.

N. W. COOKE and THOMAS WILLIAMS, for the appellants, contended that the sale made by Darrington, as administrator, was a nullity, on the following grounds :

1. The court had no jurisdiction to order the sale. The proceedings of the court, if valid, must find their warrant in the act of 1818, (Clay's Digest, 195, § 18,) which provides, in substance, that whenever it shall be made to appear to the satisfaction of the court, on the petition of "any person interested," that the estate, or those entitled to inherit the same, will be less injured by a sale of the land, for the payment of debts, than of the slaves, the court shall issue a citation to "all other interested persons," &c.; and on the return of said citation "made known," at the next term of said court, if no cause be shown, order such sale, &c. The personal estate of a decedent is primarily liable for the payment of his debts,

Matheson's Heirs v. Hearin.

(Clay's Digest, 191, § 1;) and the act of 1818, taken in connection with this statute, necessarily presupposes that all the personal estate, except the slaves, has been so applied. The petition fails to make any such allegation: it only alleges that the administrator "has employed the profits arising from the plantation and slaves, to the payment and discharge of the indebtedness, so far as the same was available." The further allegation, "that it has become necessary that some portion of said estate should be sold, in order to discharge the debts," is simply the averment of a conclusion, and is insufficient. *Non constat* but that there was a sufficiency of personal property, besides slaves, to pay all the debts. The jurisdiction of the court is dependent on the petition; and if that fails to aver the facts necessary to give jurisdiction, the proceedings are *coram non judice,* and void.—Cloud v. Burton, 14 Ala. 347; Bishop's Heirs v. Hampton, 15 Ala. 761.

The administrator is not a "party interested," within the meaning of the statute. The phraseology of the act of 1818 is different from that of the other statutes *in pari materia,* and clearly shows that only "those who are entitled to inherit the estate" are embraced in the words "any party interested." What interest has an administrator in the estate? or in the question whether the lands or slaves shall be sold to pay debts? Nor does the statute include the widow, who has no estate in the lands, until dower is assigned her, and then only a life estate in one-third; and whose interest in the slaves is absolute. Her interest, therefore, is, or may be, adverse to that of the heirs-at-law; and a sale which would promote her interest, might prejudice theirs. It is to be borne in mind, too, that these lands were specifically devised to the appellants, which excludes the idea of any interest in the widow; and it may well be doubted whether the court has jurisdiction, under the statute, to order the sale of lands thus situated. 12 Ala. 510; 8 Porter, 151. In Couch v. Campbell, 6 Porter, 262, it was held, that the court acquired jurisdiction by the petition of the administrator; but it seems to have been taken for granted, in that case, that the previous case of Wyman v. Campbell, p. 219, was conclusive on the question, and thus no attention was paid to the difference in the phraseology of the acts of 1818 and 1822. In that case, too, the lands

were undevised. The case of Couch v. Campbell is the only one in which the act of 1818 has been construed; and that case, it is insisted, is entitled to no weight as authority, because it assumed, without consideration, the very point which the court was called on to decide.

2. But, if the court acquired jurisdiction of the subject-matter by the filing of the petition, it did not acquire jurisdiction of the "other parties interested." This presents the question, whether a proceeding under this statute is *in rem*, or *in personam*; a question now for the first time presented to this court. In Couch v. Campbell, the heirs-at-law were duly cited to appear; and the court thus having jurisdiction of the parties, this question could not arise, and what was said respecting it by the judge who delivered the opinion was mere *dictum*. The other cases in which the question is noticed, arose under different statutes, in which entirely different phraseology is employed, and the nature and object of which are manifestly distinct from the act of 1818. The object of this statute was, not to empower the administrator to change the order of administration, but to enable the heirs-at-law to elect whether they would have the land sold rather than the slaves. A "party interested" must file the petition, and "all other interested persons" must be cited to appear; and the proceedings are to be conducted between them. The object is not to sell that which, of necessity, must be sold, as in a proceeding under the act of 1822; but that the parties interested might determine, or, in case of their disagreement, have the court determine for them, whether it would be less injurious to them to sell the land than to sell the slaves. It is not made the duty of the administrator to take a step in the matter; nor does it make the slightest difference to him whether the debts are paid by a sale of the slaves or of the land.

3. The order of sale is void, because, in the first place, it was made in vacation; whereas the statute only authorizes it to be made "at the next term," which must mean the next regular term. It is void, also, because it does not prescribe that the sale shall be public, that a specified notice shall be given, and how it shall be given; and fails to designate the place of sale. Although the statute does not say that the

sale shall be at the court-house door, yet, by analogy to judicial sales, it should be held there.—Clay's Digest, 216, § 76; Pollard v. Cocke, 19 Ala.

4. The sale itself is void, because it was made on the premises, and because the statutory notice was not given.

But if the proceedings of the orphans' court are valid, the bill should have been dismissed, because the complainants have a complete and adequate defense at law.—Lightfoot v. Lewis, 1 Ala. 475.

E. S. DARGAN, *contra*.—Under the former decisions of this court, the proceedings of the orphans' court were in the nature of a proceeding *in rem*, and the jurisdiction of the court was complete.—Wyman v. Campbell, 6 Porter, 219; Couch v. Campbell, 6 Porter, 262; Perkins v. Minter, 7 Ala. 864; Duval v. McLoskey, 1 Ala. 732; Duval v. P. & M. Bank, 10 Ala. 652; Thompson v. Toulmie, 2 Peters, 157; 2 How. U. S. R. 319. It is now too late to question the propriety of these decisions. They have become a settled rule of property, on which many titles depend.

RICE, C. J.—We understand the appellants to put their right to a reversal of the decree of the chancellor, upon the two following propositions: 1. That the orphans' court had no jurisdiction to order the sale, under which the appellees claim the land in controversy. 2. That, even if it had jurisdiction, the sale itself can be collaterally impeached for mere irregularities, such as the omission of the administrator to give the notice of the sale directed by law, &c. If either of these propositions be correct, the decree of the chancellor must be reversed; otherwise, it must be affirmed.

The orphans' court had no jurisdiction to order the sale, unless that jurisdiction was conferred by the second section of the act of 1818, which is in the following words: "Whenever it shall be made to appear to the satisfaction of any orphans' court, *that the estate of any deceased person*, or those who are entitled to inherit the same, *will be less injured* by a sale of the land, or *part thereof, for the payment of debts, than by a sale of slaves*, such court may, *on the petition of any party interested*, cause a citation to issue to all *other interested per-*

*sons,* if in the county, or, when that is not the case, by publication of notice in some paper, for such interested party or parties to appear at the next county court, and show cause, if any they can, why sale of the land belonging to the estate so situated should not be ordered; and on the return of such citation made known, or proof of the publication of the notice hereby required, at the next term of such orphans' court, if no cause be shown which the court deems sufficient, such court may order sale of such land, or whatever parts thereof as may be necessary to satisfy debts, without a sale of negroes; and such sale shall vest in the purchaser the same title, in law or equity, of which such decedent died possessed." Clay's Digest, 195, § 18.

In Couch v. Campbell, 6 Porter's Rep. 262, it appeared that the title of the defendants to the land therein sued for, was derived from a purchase at a sale ordered by the orphans' court, on the petition of *the administrator* of the ancestor of the plaintiffs, filed *under the aforesaid act.* The circuit judge who presided on the trial, in his charge to the jury, assumed that the proceedings in the orphans' court relating to the sale could be *collaterally* impeached, and that unless certain facts, such as the execution of a bond by the administrator faithfully to account for the proceeds of the sale, &c., appeared of record, the title of the heirs was not divested. This court reversed the judgment of the circuit court for the error of that charge, and decided that the orphans' court had jurisdiction of the case stated in the petition of the administrator—that under the aforesaid act of 1818, it was authorized to proceed, *"on petition and citation,* to order the sale of the land belonging to the estate of a deceased person, when the estate, or those entitled to inherit the same, would be less injured by a sale" of the realty than by a sale of the slaves; and that "the jurisdiction was put in full exercise, if not earlier, at least when the court recognized the petition, and made its order for the issuance of citation." And the conclusion thus arrived at and announced by this court, was declared to be fully sustained by the opinion delivered at the same term in Wyman v. Campbell, 6 Porter's Rep. 619.

In Lightfoot v. Lewis, 1 Ala. Rep. 475, the opinion of this court was expressed in the following language: "The decision

in Wyman v. Campbell, 6 Porter, 220, is based on the construction of the proviso of the act of 1820 (Aikin's Dig. 153); but *the principle* of that case applies equally to *all the enactments*, by which the orphans' court is invested with authority to direct a sale of a decedent's real estate." *"The principle thus established* was, that proceedings to subject the real estate of a decedent to sale, *were not to be considered as the execution of a mere power*, and, therefore, subject to objection on account of irregularities in its exercise; but as the judgment of a court of competent jurisdiction, whenever it appears from the record of the proceedings that the events have happened, or the acts have been done, by which a jurisdiction over the subject-matter has been acquired. From this was deduced *another principle*, equally as important—that irregularities, or even actual errors, in the proceedings of such a court, cannot be examined in a *collateral proceeding*, but only by writ of error, or appeal, or by some other mode of proceeding acting directly and immediately on the decree."

In Duval's Heirs v. The Pl. & Mer. Bank, 10 Ala. Rep. 636, this court thus expressed itself: "In Wyman v. Campbell, 6 Porter, 219, it was decided, that proceedings in the orphans' court, with a view to the sale of the realty, are *in rem* against the estate of the decedent; and that jurisdiction attaches *quoad the thing, where the petition is regularly filed, and recognized by the action of the court*, though the party in interest may *not be notified* of the pendency of the proceeding." And in that case it was held, "as the clear result of the cases cited," that whenever the jurisdiction had attached, the order of sale, although reversible in a direct proceeding, was not *void*, and could not be assailed *collaterally* for errors and irregularities.

In Doe, *ex dem.* Duval's Heirs, v. McLosky, 1 Ala. R. 709, the same principles were recognized; and Wyman v. Campbell, and Couch v. Campbell, *supra*, were cited, and treated as containing sound expositions of the law.

In Royall v. Goldsby, at the last term, after a re-hearing granted, and a re-argument had, this court determined to adhere to the principles upon which the cases above cited have been uniformly regarded as resting for support. To

the same effect is the case of Doe, *ex dem*. Saltonstall, v. Riley, 28 Ala. R. 164.

The authority of Wyman v. Campbell, and Couch v. Campbell, above cited, has not been denied in any of the numerous decisions upon the subject, which have been made by this court since January, 1838—the time when Wyman v. Campbell, and Couch v. Campbell, were decided. We think the presumption a fair one, that *the opinions* delivered in those cases have been acted on as a rule of property. And therefore, the reasons which impel courts to uphold every settled rule of property, require us to re-affirm and maintain those cases, not only as to the points necessarily involved in and decided by them, but also as to *the principles* which are declared in Lightfoot v. Lewis and the subsequent cases above cited to have been established by them.

Applying these principles to the case at bar, we are compelled to hold, that the orphans' court of Clarke county had jurisdiction to make the order of the sale, on the petition of the administrator; that the administrator is "a party interested," within the meaning of the act of 1818; that the order of sale was not void, and, therefore, cannot be collaterally impeached for errors and irregularities; that the sale made by the administrator under the order, is a judicial sale; and that, although there may be irregularities in it, such as the omission of the administrator to give the notice of it directed by law, it is not void, and cannot be *collaterally* impeached for such irregularities.—Worthington v. McRoberts, 9 Ala. R. 297; Duval v. The Pl. & Mer. Bank, *supra*; Mobile Cotton Press v. Moore, 9 Porter's Rep. 679; Love v. Powell, 5 Ala. R. 58.

The points made by appellants in this court, are necessarily decided against them by what we have above said; and the decree of the chancellor is affirmed, at their cost.