# Hooper *v.* Young *et al.*

*Motion to Confirm Report of Register as to Sale of Lands, and Exceptions thereto.*

*Sale of lands by register ; when not set aside as being premature, or because decree fails to designate place of sale.*—In a suit in chancery to subject lands to the payment of debts, a consent decree was rendered in June, 1875, ascertaining the amount of indebtedness entitled to a lien on the land, and directing that the register proceed "upon or after the 15th day of Nov'r next, to sell the lands for cash at public outcry to the highest bidder, after first giving notice of the time and place, and terms of sale, by publication" in a designated newspaper for three weeks, &c. The decree also contained this further stipulation: "If, before the 15th day of November, 1875, the defendants shall pay the costs of this suit, and $200, to be applied *pro rata* on debts due complainants, then the sale of said lands shall be stayed until the 15th day of November, 1876, when the sale shall take place upon the same terms and conditions as above provided, unless the defendants shall before that time pay" another given sum, &c. The decree further directed, if the register should fail to advertise and sell the lands "on any of the days herein mentioned on which he is directed to sell, he shall do so as early thereafter as convenient, and if the defendants fail to pay any of the amounts herein specified, there shall be no further delay, &c. The register having first made publication as directed in the order, &c., exposed the lands for sale at public outcry at the court-house door of the county in which the lands were situate, and the court was held, on the 15th day of November, 1875, and executed a conveyance to the purchaser, who was the highest bidder. Upon the coming in of his report showing these facts, and certifying the failure of the defendants to comply with the terms of the order of sale, the defendants excepted to the report, &c., because the sale was pre-

[Hooper v. Young et al.]

maturely made, and because no place of sale was designated in the decree, and the Chancellor refused to confirm the report and set aside the sale, on the ground that it was prematurely made. *Held :*

1. The effect of the stipulation for a stay of sale was to confer on defendants the right to a further stay to a given day, beyond that fixed in the order, upon making payment as therein provided "before the 15th day of November, 1875," and not having made payment before that time, a sale on that day (proper advertisement first having been made) was authorized by the decree; and although defendants had the legal right, independent of the stipulations of the decree, to stop the sale at any time before it was actually made, upon paying the debt and costs, this right, in the absence of such payment or tender, could not affect the validity of the sale made on the day named in the decree.

2. A sale of lands, made after due advertisement and in the usual manner of judicial sales, at the court-house door of the county where the lands lie, will not be set aside, merely because the decree is silent as to the place where the sale is to be made.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. N. S. GRAHAM.

On the 11th of June, 1875, the appellants, G. D. Hooper and another, obtained, on a bill to subject lands to payment of debts secured by mortgage, a consent decree against appellees, Wm. C. Younge, and another, ascertaining the several amounts due complainants (appellants), by defendants (appellees). The decree states that "it is further ordered, adjudged and decreed that the register proceed upon or after the 15th day of November, 1875, to sell the lands described in the mortgage, attached to complainants' bill, for cash at public outcry to the highest bidder, after first giving notice of the time, place and terms of said sale, by publication in the Opelika Observer, a newspaper published in Opelika, Lee county, Ala., for three successive weeks, and shall apply the proceeds of said sale to the payment, &c. . . . And it is further adjudged and decreed, that if, before the 15th of November, 1875, the said defendants shall pay the costs of this suit, and two hundred dollars, to be applied *pro rata*, on the debts due complainants, then the sale of said land shall be stayed until the 15th of November, 1876, when said sale shall take place in the same manner, and upon the same terms above provided, unless the defendants shall, before that time, have paid four hundred dollars on the amount above ascertained to be due the complainants, in addition to the $200, &c. . . . . That if the register should fail to advertise and sell said land on any of the days herein mentioned, on which he is directed to sell, he shall do so at as early a time after said days mentioned as may be convenient; and if the defendants fail to pay any of the amounts herein specified, then no further delay shall be had in regard to the sale of said lands," &c.

On the 29th of November, 1875, the register reported to

said court, that "in pursuance of said decree, and the defendants having wholly failed and refused to comply with the requirements thereof within the time specified, I did, on Monday, the 15th day of November, 1875, after advertising the time, place and terms of sale, in compliance with said decree, sell at public outcry at the court-house door of Opelika, &c., the following described land, to-wit— (the same as mentioned in the decree.) . . . . I further certify that the purchasers having complied with the terms of said sale, I executed to them a deed to said land."

On the 30th of November, 1875, the appellees filed the following exceptions to said report, and asked that the said sale be set aside for the following reasons: 1st, the report shows that said sale was made at an earlier day than the decree allowed; 2d, the report shows that the sale was made at the court-house door of Opelika, while the decree designates no place at which the sale should be made; 3d, the decree, failing to designate a place of sale, the said sale at said court-house door was unauthorized; 4th, that no legal sale was ever had.

The cause coming up to be heard on motion of defendants to set aside said sale and exceptions to register's report, the Chancellor sustained the first exception of defendant and ordered that the sale be set aside and the deed made by said register be annulled, and adjudged that "said decree stands in all respects as if said sale had never been made." The refusal of the Chancellor to confirm the sale and his decree sustaining the first exception of defendants, is now assigned as error.

G. D. & G. W. HOOPER, for appellants.—1. The Chancery Court had authority by its decree of the 11th of June, 1875, to order the register to sell the mortgaged lands, upon the 15th day of November, 1875. And the words, "The register *proceed upon* or *after* the 15th day of November, 1875, to sell the lands *after* first giving notice," means that "the register shall, upon or after the 15th of November, 1875, sell the lands," &c. The word "proceed," we accept as being equivalent to "*go forward*"—from the latin *pro* and *cedo,* and we approve the register's action in *going forward*, as he did, and selling on the day specified. The construction of the decree is that it meant a *sale on* the said day; the advertising was preliminary and not part of the sale.

2. As to the point that no sale can be had under the decree of 11th June, 1875, because no place was named, (decided in our favor by the Chancellor), we say the decree is by consent, and therein the parties chose by consent to leave

it to the discretion of the register. It is the usual course to leave the selection of the place to the register, even without consent.—See Forms in Daniel's Ch. Prac.; *Richardson v. Holms*, 18 How. 147, and cases there cited; Rorer on Judicial Sales, 53 ; see, also, *Brown v. Brown*, 41 Ala.

F. M. WOOD, with whom were SAMFORD and DOWDELL, *contra*.—1. Was the sale premature? It was, for two reasons : 1st. Because defendants had the whole of the 15th of November within which to pay the first installment. In computing time, the last day must always be excluded.—Rev. Code, § 14; *Field et al. v. Gamble*, 47 Ala. 443. 2d. The sale was premature, because no action could be taken by the register under the decree prior to the 15th of November.

2. *Advertising* the land for sale was the first step in the *process* of sale. The register did this several weeks before the 15th of November, in the face of the decree which ordered him to *proceed, i. e. move in the steps necessary to make the sale,* on or after that day ; in no event before.

3. The terms of sale, and the place, the Chancellor alone has the power to designate. From this source and none other, must the register acquire the right to designate the place at which the sale must be made. Such right is conferred exclusively on the Chancellor at common law. The case of *Brown v. Brown*, (41 Ala. 215) is strikingly analogous. In probate court sales, the law has conferred on the judge of probate the power to name the place of sale. This exclusive power conferred on the judge of probate by statute, in cases arising in his court, is conferred exclusively on the Chancellor by the common law in cases in courts of equity.

STONE, J.—The able and well-considered opinion of the Chancellor makes a plausible case for holding that the sale on November 15th, 1875, was premature. We feel constrained, however, to hold that in this he erred. The original consent decree of June 11th, 1875, first ascertained the several amounts due complainants, with a stay of the execution of the decree till November 15, 1875. Its language is : "It is therefore ordered, adjudged and decreed that the register proceed on or after the 15th day of November, 1875, to sell the lands described in the mortgage," &c. If the decree had rested on what is stated above, and had not contained the provisions after stated, no one would doubt that the advertisement might precede, and the sale be made *on* the 15th November. It was the sale which was postponed to that day, not the advertisement. The fifteenth day of November, 1875, fell on Monday, and the effect of the decree

was that the register, "after first giving notice of the time, place and terms of said sale, . . . for ·three successive weeks," might proceed to sell, "upon or after the 15th day of November, 1875," &c. We repeat, if the decree contained no clause or words which qualify or limit this general authority to sell, no one would question the right to sell *on* the 15th day of November.

But the decree does contain a limitation on this general authority to sell, inserted obviously for the accommodation and benefit of the defendants. It was conditional in its terms, and operates as a contingent defeasance of the previously conferred authority and right. It was a privilege granted to the defendants to obtain further delay in the execution of the decree, by making partial payment "before the 15th day of November, 1875." Its language is, "If before the 15th day of November, 1875, the said defendants shall pay the costs of this suit and two hundred dollars, . . . then the sale of said land shall be stayed until the 15th day of November, 1876, when said sale shall take place in the same manner and upon the same terms," &c. There were then added other provisions, precisely like the last, for further extension of the day of sale, on making designated partial payments by the defendants. Neither of said conditional provisions varied from the language copied above; and, in each case, the 15th day of November is the named day, *when,* or, *at which time,* the sale was to take place. The last paragraph of the decree is in the following language: "That if the register should fail to advertise and sell said land on any of the days herein mentioned, on which he *is directed to* sell, he shall do so at as early a time after said days mentioned as may be convenient; and if the defendants fail to pay any of the amounts herein specified, then no further delay shall be had in regard to the sale of said lands," &c.

It will be observed that the language of the decree is, if the defendants pay "before the 15th day of November." The meaning of the word 'before' in this connection, is *earlier than, previous to.* It confers no right to pay *on* the 15th of November, and thus secure the right to further extension. To claim that, as matter of right, the defendants must have paid earlier than—previous to—the 15th day of November. This was matter of contract, expressed in the decree; and not a mere legal construction of the usual decree to sell. True, the defendants had the right to pay, and thus stop the sale, up to the very moment when the property was sold; but it was not a right growing out of the conditions above expressed. It was but the common right of all judgment or execution debtors, to pay the money demanded, and thus

prevent the sale of their property; for, in such cases, payment of the money is a finality. But, to have this effect, the payment, if made on the 15th, must not simply be of the $200 and costs. It must be of the entire decree and costs. We hold that the decree in the present case gave to the register the general power to sell on the 15th day of November, with a privilege to the defendants to arrest the sale—not the advertisement—by making a specified partial payment *before* the 15th. We hold that the register's sale was not prematurely made.

There is nothing in the cross assignment of error. The decree of the Chancellor being silent as to the place of sale, it was the duty of the register to sell the lands at the door of the court-house.—*Matheson v. Mearin*, 29 Ala. 210.

On the cross assignment of errors, we concur with the Chancellor in holding that the sale should not be set aside, by reason of the failure of the decree to designate the place of sale.

The decree of the Chancellor, setting aside the sale as prematurely made, is reversed, and a decree here rendered, confirming the sale made by the register. Let the costs be paid by the appellee.